MONTANA *v.* HALL

No. 86–1381.   Decided April 27, 1987

PER CURIAM.

In 1984 the State of Montana filed an information in the Yellowstone County District Court charging respondent with felony sexual assault in violation of Mont. Code Ann. § 45–5–502 (1981). The affidavit in support of the information indicated that the assault took place during the summer of 1983, and that the victim was the daughter of respondent's ex-wife. The victim was 12 years old at the time of the offense. Four days before trial, respondent filed a motion to dismiss the information, arguing that because the victim was his stepdaughter he could be prosecuted only for incest, under Mont. Code Ann. § 45–5–507 (1983), not sexual assault. Respondent argued that incest was merely a specific instance of sexual assault, and that the Montana Legislature had not intended incestuous acts to be subject to prosecution under the more general sexual assault statute. On the morning of the trial, the State District Court held a hearing and then granted the motion. The State promptly filed a new information charging respondent with incest, and proceeded to trial. A jury convicted respondent. The judge sentenced respondent to 10 years' imprisonment, but suspended 5 years of the sentence.

Respondent appealed his conviction to the Montana Supreme Court, raising a number of claims not directly relevant to the issue before this Court. One of respondent's claims was that he could not lawfully be convicted of incest because the victim was not his stepdaughter within the meaning of the Montana incest statute. In the course of considering this claim, the State discovered that at the time of the assault the incest statute had not applied to sexual assaults against stepchildren. The amended statute under which respondent was tried had not become effective until

October 1, 1983, three months after the assault in question. On March 5, 1986, the State filed a motion bringing this matter to the attention of the Montana Supreme Court.

After briefing on the questions raised by the State's motion, the Montana Supreme Court concluded that the conviction was void because retroactive application of the amended statute would violate the *ex post facto* law prohibition of the Montana Constitution, Art. II, § 31. It also held that the Double Jeopardy Clause of the Fifth Amendment to the Federal Constitution prohibited retrial of respondent. It stated that "[i]f the offense charged in the second trial is the same in law and fact as the offense charged in the first trial, the double jeopardy clause prohibits successive trials." 224 Mont. 187, 190, 728 P. 2d 1339, 1340 (1986) (citing *Brown* v. *Ohio*, 432 U. S. 161, 167, n. 6 (1977)). The court then analyzed the elements of sexual assault and incest and concluded that they were the same offense for double jeopardy purposes. Relying on this conclusion and *Brown* v. *Ohio*, it held that the Double Jeopardy Clause barred retrial. As an alternative ground of decision, it noted that respondent "was convicted of a crime which did not exist on the date of the charged offense." 224 Mont., at 192, 728 P. 2d, at 1342. In the court's view, a retrial after a conviction for committing a nonexistent crime also would subject respondent to double jeopardy.

It is a "venerable principl[e] of double jeopardy jurisprudence" that "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, *Burks* v. *United States*, [437 U. S. 1 (1978)], poses no bar to further prosecution on the same charge." *United States* v. *Scott*, 437 U. S. 82, 90–91 (1978). See generally 3 W. LaFave & J. Israel, Criminal Procedure § 24.4 (1984). Justice Harlan explained the basis for this rule:

> "Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose

guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest." *United States* v. *Tateo,* 377 U. S. 463, 466 (1964).

See *Burks* v. *United States, supra,* at 15.

Although Montana's *ex post facto* law clause prevents Montana from convicting respondent of incest, we see no reason why the State should not be allowed to put respondent to a trial on the related charge of sexual assault. There is no suggestion that the evidence introduced at trial was insufficient to convict respondent. See *Burks* v. *United States, supra.*[1] Montana originally sought to try respondent for sexual assault. At respondent's behest, Montana tried him instead for incest. In these circumstances, trial of respondent for sexual assault, after reversal of respondent's incest conviction on grounds unrelated to guilt or innocence, does not offend the Double Jeopardy Clause.

The principal federal authority relied on by the Montana Supreme Court was our decision in *Brown* v. *Ohio, supra.* The petitioner in that case had been convicted of joyriding. After serving a term of imprisonment on that conviction, he was charged with auto theft. We concluded that the charges

---

[1] Nor was the jury's conviction of respondent on the charge of incest an implied acquittal of the offense of sexual assault; there would have been an implied acquittal only if the jury had been presented with charges of both sexual assault and incest and had chosen to convict respondent of incest. See *Green* v. *United States,* 355 U. S. 184 (1957).

of joyriding and theft punished a single offense, and thus that retrial was impermissible. But the *Brown* analysis is not apposite in this case.[2] In *Brown*, the defendant did not overturn the first conviction; indeed, he served the prison sentence assessed as punishment for that crime. Thus, when the State sought to try him for auto theft, it actually was seeking a second conviction for the same offense. By contrast, respondent in this case sought, and secured, invalidation of his first conviction. This case falls squarely within the rule that retrial is permissible after a conviction is reversed on appeal.

The Montana court also suggested that the Double Jeopardy Clause would forbid retrial because respondent was convicted of an offense that did not exist when respondent had committed the acts in question. But, under the Montana court's reading of the Montana sexual assault statute, respondent's conduct apparently was criminal at the time he engaged in it. If that is so, the State simply relied on the wrong statute in its second information. It is clear that the Constitution permits retrial after a conviction is reversed because of a defect in the charging instrument. *E. g., United States* v. *Ball*, 163 U. S. 662, 672 (1896).

We grant Montana's petition for a writ of certiorari[3] and reverse the judgment of the Montana Supreme Court.[4] The

---

[2] We explicitly noted in *Brown* that the case did not raise "the double jeopardy questions that may arise . . . after a conviction is reversed on appeal." 432 U. S., at 165, n. 5.

[3] As JUSTICE STEVENS implicitly acknowledges, we have jurisdiction over this petition under 28 U. S. C. § 1257(3). The Montana court's decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law," and "the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Michigan* v. *Long*, 463 U. S. 1032, 1040–1041 (1983).

[4] We express no opinion on the correctness, as a matter of federal constitutional law, of the Montana Supreme Court's conclusion that sexual assault and incest are the "same" offenses.

case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN would deny the petition for certiorari.

JUSTICE MARSHALL, dissenting.

For years, I have been troubled by our disposition of appeals and petitions for certiorari through summary *per curiam* opinions, without plenary briefing on the merits of the issues decided.[1] Other Justices have registered similar objections, disputing the Court's application of the criteria that supposedly determine when a summary disposition is clearly justified.[2] Our persistent indulgence in this practice over the objections of our colleagues has tarnished what has long been considered one of this judicial institution's greatest qualities, the fairness and integrity of its decisionmaking process.

Through summary dispositions, we deprive the litigants of a fair opportunity to be heard on the merits. Our Rules tell the petitioner and respondent that we will grant review on

---

[1] See, *e. g.*, *Allen* v. *Hardy*, 478 U. S. 255, 261 (1986) (MARSHALL, J., dissenting); *Maggio* v. *Fulford*, 462 U. S. 111, 120 (1983) (MARSHALL, J., dissenting); *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56, 62 (1982) (MARSHALL, J., dissenting); *Wyrick* v. *Fields*, 459 U. S. 42, 50 (1982) (MARSHALL, J., dissenting); *Harris* v. *Rivera*, 454 U. S. 339, 349 (1981) (MARSHALL, J., dissenting); *Schweiker* v. *Hansen*, 450 U. S. 785, 791 (1981) (MARSHALL, J., dissenting); *Harris* v. *Rosario*, 446 U. S. 651, 652 (1980) (MARSHALL, J., dissenting); *Smith* v. *Arkansas State Highway Employees*, 441 U. S. 463, 466 (1979) (MARSHALL, J., dissenting).

[2] See, *e. g.*, *Board of Education of Rogers, Ark.* v. *McCluskey*, 458 U. S. 966, 971–972 (1982) (STEVENS, J., dissenting); *United States* v. *Hollywood Motor Car Co.*, 458 U. S. 263, 271 (1982) (BLACKMUN, J., dissenting); *Hutto* v. *Davis*, 454 U. S. 370, 387 (1982) (BRENNAN, J., dissenting); *Stone* v. *Graham*, 449 U. S. 39, 47 (1980) (REHNQUIST, J., dissenting); *Oregon State Penitentiary* v. *Hammer*, 434 U. S. 945, 947 (1977) (STEVENS, J., dissenting); *Eaton* v. *Tulsa*, 415 U. S. 697, 707 (1974) (REHNQUIST, J., dissenting); cf. *Shipley* v. *California*, 395 U. S. 818, 821 (1969) (WHITE, J., dissenting).

writ of certiorari "when there are special and important reasons therefor."[3]  In listing the considerations that are important in deciding whether review should be granted, we mention such things as conflicting decisions from other courts and unsettled questions of federal law.  We do *not* indicate that the parties should address the merits of the lower court's decision beyond what is necessary to demonstrate whether the case is important enough to receive plenary review.[4] Our 30-page limit for petitions and responses, and the command that they be "as short as possible,"[5] unmistakably indicate that these papers should not contain detailed discussions of the merits.  If we find the case sufficiently important, the Rules inform the parties that the petition will be granted and "[t]he case then will stand for briefing and oral argument."[6] Yet when we issue a summary disposition we ignore these instructions and proceed to decide the case as if it has been fully briefed on the merits.  In my view, simply put, this is not fair.[7]

Admittedly, the Rules indicate that summary dispositions on the merits are possible,[8] but in light of our instructions regarding the preparation of petitions and responses this places the litigants in a difficult dilemma.  If they venture

---

[3] This Court's Rule 17.1.

[4] At our direction the respondent focuses instead on "disclosing any matter or ground why the cause should not be reviewed."  Rule 22.1.

[5] Rules 21.4 and 22.2.  In this case, petitioner devoted 12 pages to the merits of the double jeopardy issue decided by the Court today, respondent only 7.  Pet. for Cert. 10–21; Respondent's Brief in Opposition 8–14.  An *amicus curiae* brief submitted on behalf of 17 States devoted a total of five pages to the merits.  Brief for the States and Commonwealths of Indiana et al. as *Amici Curiae* 2–6.

[6] Rule 23.2.

[7] This lack of fairness has not escaped the notice of commentators.  See, *e. g.*, E. Brown, The Supreme Court 1957 Term—Forward: Process of Law, 72 Harv. L. Rev. 77, 80, 82, (1958); R. Stern, E. Gressman, & S. Shapiro, Supreme Court Practice 284–285 (6th ed. 1986).

[8] Rule 23.1.  This Rule was not codified until 1980.  Stern, Gressman, & Shapiro, Supreme Court Practice, *supra*, at 277.

beyond arguments for granting or denying certiorari, they risk violating the Rules; but if they fail to cover the merits of the lower court's decision *in full*, they risk summary disposition without having been heard.[9] In response to these pressures, counsel may tend to extend their arguments in petitions and responses beyond the purposes defined in the Rules. Apart from increasing the litigants' costs, this tendency can only increase our workload, thereby giving those who favor uncounseled summary dispositions additional justification for not allowing full briefing on the merits.[10]

Not only do we reach these summary dispositions without the benefit of thorough briefing, but the Court often acts without obtaining the complete record of the proceedings below. Records are no longer automatically certified and delivered to us for every petition.[11] In fact, we expressly discourage transmission of the record at this stage of the proceedings,[12] which again indicates that the focus of certiorari is on whether a case is important enough to warrant plenary review and not whether, after abbreviated review, we are able to conclude that the case was rightly or wrongly decided below. Of course, we may call for the record where we think a summary disposition might be proper, and our Clerk notifies the parties of this development, but we do not provide for supplemental briefing on the merits.[13] All too often, as in the case decided today, the Court does not even bother to call

---

[9] Cf. *United States* v. *Hollywood Motor Car Co., supra,* at 271 (BLACKMUN, J., dissenting).

[10] See *Hutto* v. *Davis, supra,* at 387, n. 6 (BRENNAN, J., dissenting); Stern, Gressman, & Shapiro, Supreme Court Practice, *supra,* at 286.

[11] See generally Stern, Gressman, & Shapiro, Supreme Court Practice, *supra,* at 329–333.

[12] Rule 19.1.

[13] A party may, at any time, file a supplemental brief not exceeding 10 pages, but these briefs can only address a "new matter" not available at the time of the party's last filing. Rule 22.6. This Rule does not envision supplemental briefing when the Court calls for the record. See also Rule 21.3 (supplemental brief in support of petition will not be received).

for the record. Again, counsel face a dilemma: they may routinely request that records be transmitted, thus protecting the interests of their clients at the risk of violating the Rules, or they may fail to request transmission and risk summary disposition based on less than complete review.

I cannot accept the proposition that additional briefing and review of the full record will increase the workload of this Court unbearably. Our duty to litigants today is to consider carefully every petition and response filed in this Court. But our duty extends to future litigants as well, and it is heightened when we issue written opinions. To reduce the incidence of mistakes and to avoid delivering conflicting or confusing opinions, our decisions in these cases should be made only after we have had an opportunity to consider comprehensive briefs and review the records in their entirety. We are not infallible, as is evidenced, for example, by the number of cases each Term that are dismissed *after* plenary briefing and oral argument as having been improvidently granted. The time and effort required to read supplemental briefs in cases for which we are considering summary dispositions would be minimal,[14] and the relative gains substantial.

More is at stake, however, than offsetting the litigants' entitlement to be heard on the merits against our desires to avoid increasing the workload. Summary dispositions often do not accord proper respect for the judgments of the lower

---

[14] To put matters in perspective, were we to shorten the acceptable length of petitions and responses merely by one-fifth of a single page, it would free up at least 2,000 pages worth of our reading time to consider full briefs for the relatively few summary dispositions we issue each year. That comes to 40 briefs, at 50 pages each, or 20 cases decided in which the parties and the Court would have the benefit of full briefing. This assumes that 5,000 petitions are filed each year, and that on the average litigants use the complete 30 pages allowed. The former assumption is conservative and is a matter of record; based on my personal observation the latter assumption is more than fair.

courts, particularly when these judgments are reversed.[15] The judges below *have had* the benefit of full briefing on the merits and review of the entire record. They must perceive—correctly—that our cavalier reversals are inherently less well informed.

I believe, moreover, that summary dispositions in many instances display insufficient respect for the views of dissenting colleagues on *this* Court. The tendency is to forget that we are equally uninformed. What troubles a single Justice about a particular case may become, after full briefing, a decisive factor in the judgment of the Court. As it is, we forge ahead issuing *per curiam* opinions as if the issue were crystal clear, at times over objection from as many as four other Justices.[16] It is not unreasonable to believe, as I do, that the integrity of a summary decision from a divided Court would benefit from additional briefing on the merits by those who have litigated the issues of the case from its inception.

*"Per curiam"* is a Latin phrase meaning "[b]y the court,"[17] which should distinguish an opinion of the *whole* Court from an opinion written by any one Justice. Our use of a lengthy *per curiam* opinion, over the dissent of those who would set the case for briefing, to resolve the merits of a case without devoting the usual time or consideration to the issues presented, is wrong. Such an opinion does not speak for the entire Court on a matter so clear that the Court can and should speak with one voice. Instead, it speaks for a majority of Justices who take it upon themselves to resolve the merits of a dispute solely on the basis of preliminary petitions and responses.

I can think of no compelling reason, and to date none has been suggested, why we should nurture a practice that can

---

[15] See, *e. g., Stone* v. *Graham,* 449 U. S., at 47 (REHNQUIST, J., dissenting); *Oregon State Penitentiary* v. *Hammer,* 434 U. S., at 947 (STEVENS, J., dissenting).

[16] See, *e. g., Newport* v. *Iacobucci,* 479 U. S. 92 (1986).

[17] Black's Law Dictionary 1023 (5th ed. 1979) (emphasis added).

only foster resentment, uncertainty, and error. Rather, I believe that when the Court contemplates a summary disposition it should, at the very least, invite the parties to file supplemental briefs on the merits, *at their option*. This simple accommodation to the reasonable expectations of the litigants, to the integrity of the lower courts, and to the desires of other Justices for a more studied decision would go a long way toward achieving the fairness and accuracy that the Nation rightfully expects from its Court of last resort. Until this, or some other, reasonable accommodation is implemented, I remain in dissent.

JUSTICE STEVENS, dissenting.

"Respect for the independence of state courts, as well as avoidance of rendering advisory opinions, have been the cornerstones of this Court's refusal to decide cases where there is an adequate and independent state ground." *Michigan* v. *Long,* 463 U. S. 1032, 1040 (1983).

Perhaps the Court is correct in assuming that the decision of the Supreme Court of Montana does not rest on an adequate and independent state ground. Nevertheless, it is worthy of note that the state court expressly relied on Article II, § 25, of the Montana Constitution[1] and cited four decisions of the Montana Supreme Court in support of its double jeopardy holding.[2] Furthermore, after concluding that "the double jeopardy clause prohibits [respondent's] retrial," 224 Mont. 187, 192, 728 P. 2d 1339, 1342 (1986), the Montana court advanced an alternative ground for its decision that is supported only by the Montana case of *State* v. *Hembd,* 197 Mont. 438, 643 P. 2d 567 (1982), namely that retrial would be impermissible because respondent was convicted of an of-

---

[1] Article II, § 25, of the Montana Constitution provides: "No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction."

[2] *State* v. *Lindseth,* 203 Mont. 115, 659 P. 2d 844 (1983); *State* v. *Wells,* 202 Mont. 337, 658 P. 2d 381 (1983); *State* v. *Hembd,* 197 Mont. 438, 643 P. 2d 567 (1982); *State* v. *Parmenter,* 112 Mont. 312, 116 P. 2d 879 (1941).

fense that did not exist when he committed the acts in question; this state-law doctrine has no federal counterpart of which I am aware.

My respect for the independence of state courts, as well as the desirability of not rendering opinions that may turn out to be wholly advisory, therefore persuades me that the Court's summary disposition is unwise. See, *e. g.*, *People* v. *P. J. Video, Inc.*, 68 N. Y. 2d 296, 501 N. E. 2d 556 (1986) (declining to follow *New York* v. *P. J. Video, Inc.*, 475 U. S. 868 (1986)), cert. denied, 479 U. S. 1091 (1987); *Commonwealth* v. *Upton*, 394 Mass. 363, 476 N. E. 2d 548 (1985) (declining to follow *Massachusetts* v. *Upton*, 466 U. S. 727 (1984)); *Bellanca* v. *New York State Liquor Authority*, 54 N. Y. 2d 228, 429 N. E. 2d 765 (1981) (declining to follow *New York State Liquor Authority* v. *Bellanca*, 452 U. S. 714 (1981)), cert. denied, 456 U. S. 1006 (1982); *State* v. *Opperman*, 247 N. W. 2d 673 (S. D. 1976) (declining to follow *South Dakota* v. *Opperman*, 428 U. S. 364 (1976)).

I would simply deny Montana's petition for a writ of certiorari.