**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Frank RUNNELS, (86–1923), Arnold Shapero, (86–1922), Defendants–Appellees.**

**Nos. 86–1923, 86–1922.**

United States Court of Appeals,
Sixth Circuit.

Argued May 8, 1987.

Decided March 28, 1988.

Order Granting Rehearing En Banc
May 3, 1988.*

---

* Opinion and judgment vacated and mandate is stayed.

**910**

Neil H. Fink (argued), Keith E. Corbett (argued), Asst. U.S. Atty., Detroit, Mich., William J. Weinstein (argued), Joel L. Hoffman, Southfield, Mich., for plaintiff-appellant.

Keith E. Corbett (argued), Asst. U.S. Atty., Detroit, Mich., for defendants-appellees.

Before GUY and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

BOGGS, Circuit Judge.

In his petition for rehearing, Shapero points out that he did not plead guilty to the original indictment brought against him and Runnels, the indictment on which Runnels was ultimately tried. Instead, Shapero pled guilty to a superseding information which specifically charged him only with a scheme intended "to defraud the members of local 22 ... of the right to have the business of Local 22 conducted honestly, fairly ..., free from corruption ... and fraud." Thus, he was not charged with, nor did he plead guilty to, acts falling within the general ambit of the mail fraud statute, such as the act of depriving the union members of a benefit that might otherwise have been available to them. The Supreme Court has now indicated that a mail fraud conviction may rest on the deprivation of benefits that have monetary value, though they are not in a sum that has been liquidated, or perhaps even subject to ascertainment, *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 321, 98 L.Ed.2d 275 (1987). However, Shapero was not charged with such a crime. Therefore, Shapero's conviction based on his guilty plea must be REVERSED, and the case REMANDED to the district court with instructions to dismiss the information.

We express no opinion on whether the government may properly present a new indictment or information to which Shapero may then plead. *See Montana v. Hall*, —— U.S. ——, 107 S.Ct. 1825, 1826–27, 95 L.Ed. 2d 354 (1987).

In the case of Runnels, on the other hand, the indictment and the jury instructions encompassed the mail fraud statute in the broadest terms of the statutory language. He was tried for, had an opportunity to defend against, and was convicted of fraud in its common meaning. The indictment in Count One charges a conspiracy based on a "scheme or artifice to defraud in violation of 18 U.S.C. 1341; the scheme and artifice was intended; ... (b) to obtain money by means of false and fraudulent pretenses...." Count Two charges mail fraud by causing mailings for the "purpose of executing the aforementioned scheme and artifice...."

The judge instructed the jury that the government's theory was based on the indictment, and that an essential element of Count One was "[t]hat the conspiracy *described in the indictment* was willfully formed ...;" (emphasis supplied). He also instructed on Count Two in the words of the statute, adding that the words "scheme" and "artifice" in the statute "*include* any plan ... to deprive the members of [local 22] of intangibles...." (emphasis supplied). However, the instruction was not limited to the "intangible rights" theory. It also permitted the jury to convict if it believed that Runnels's actions did constitute a conventional fraud. The court also instructed that the defense's case was based on the theory that Runnels took no money at all, and, in the alternative, that

any money he took was in no way money of the union members. Thus, the jury had a conventional fraud theory before it, as well as the improper "intangible rights" theory.

■ As indicated in *Carpenter v. United States*, — U.S. at ——, 108 S.Ct. at 321, the mail fraud statute is broad enough to encompass the deprivation of any real benefit, including those growing out of a fiduciary obligation. That is exactly what we have in this case. There is nothing about Runnels's situation that would remove it from the conventional analysis, set out in our original opinion, that allows a conviction to stand in certain types of cases even though one underpinning of the conviction has been swept away. The jury's verdict shows conclusively that it found every item necessary to support all elements of a conviction under the mail fraud statute. There has thus been no unfairness, procedural or substantive, to Runnels and his conviction is AFFIRMED.

RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.

I concur in that part of the court's opinion on rehearing which reverses the conviction of Shapero and remands for further proceedings.

I adhere to my dissent, however, as it relates to the mail fraud conviction of Runnels. In its opinion on rehearing, the court essentially reiterates the arguments made in the initial opinion except the recent case of *Carpenter v. United States*, — U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), is cited for further support. My own analysis of *Carpenter* is that it does not support the court's conclusion and may well detract from it. *Carpenter* involves the use by a Wall Street Journal reporter of information he received as an employee of the Journal for the purpose of profiting by playing the stock market. The Supreme Court concluded that the defendant's conduct violated the mail fraud statute. The court stated:

> The Journal, as Winans' employer, was defrauded of much more than its contractual right to his honest and faithful service, an interest too ethereal in itself to fall within the protection of the mail fraud statute, which "had its origin in the desire to protect individual property rights." *McNally* [*v. U.S.*], *supra*, [—— U.S. ——] at ——, n. 8, 107 S.Ct., [2875] at 2881, n. 8 [97 L.Ed.2d 292 (1987)]. Here, the object of the scheme was to take the Journal's confidential business information—the publication schedule and contents of the "Heard" column—and its intangible nature does not make it any less "property" protected by the mail and wire fraud statutes. *McNally* did not limit the scope of § 1341 to tangible as distinguished from intangible property rights.

*Carpenter*, 108 S.Ct. at 320.

I have no problem with this reasoning but it is not our case. Although our case involves illegal, fraudulent, unethical, and despicable conduct by union officials, workers, and lawyers, it does not involve a viable mail fraud count as the indictment was drafted. Simply stated, unscrupulous attorneys have been soliciting retiring workers for many years in Michigan and encouraging them to file workers' compensation claims after they retire whether there is any legitimacy to the claim or not. The practice is lucrative enough that there is competition for it. The lawyers that can get a union official to steer the retirees to them have an edge. Runnels knew this and decided to capitalize on it. This certainly constituted, as the indictment charged, "defraud[ing] the members of Local 22 ... of the right to have the business of Local 22 conducted honestly ... [and] free from corruption...." Unfortunately, however, that is the intangible-rights theory struck down by *McNally*.

It is true that the indictment also contains the charge that there was a scheme "to obtain money by means of false and fraudulent pretenses and representations...." If the government had then proceeded to show that some of the workers' compensation claims subsequently filed were phony and that employers and insurance companies were thus defrauded of money, they would have had a good case. But that was not their theory and they made no attempt to do this. The

retiring union members are not victims—for the most part they are part of the problem and involved in the scheme. As reprehensible as Runnels' involvement in all of this may have been, no "property" of the union or union members was involved. I would agree that an "economic benefit" could meet the *Carpenter* test of intangible "property." But the indictment did not fairly put Runnels on notice that this type of intangible interest was involved. The only intangible interest charged by the indictment was the kind struck down by *McNally*.

I do not mean to be critical of the prosecution for proceeding in the manner that it did. When this indictment was filed, pre-*McNally*, the intangible-rights theory was a perfectly good theory and one that fit this case. It would have been a much more complicated case to prove participation in the filing of fraudulent claims and one that implicates more state concerns than federal.

Since the first opinion in this case was filed, I have re-read the indictment and the jury instructions and it seems even clearer to me than before that the government put all of their eggs in the intangible-rights basket. The court would attempt to counter this, at least in part, by claiming that Runnels defended by saying he did not take any money. In other words, the implication is that since Runnels' defense was innocence, it does not matter what the theory of the prosecution was since the jury must have found him to have, in fact, taken money. I do not understand this to be the law. The government must charge and convict under a statute whose elements fit the facts regardless of how absurd a defense or what theory of defense is offered. Since under the intangible-rights theory Runnels' blatant misuse of his official union position would have constituted mail fraud, he had little choice in his defense other than to claim he did not do it. No confession and avoidance argument would have worked.

Accordingly, I must still indicate that I would REVERSE the judgment of conviction of defendant Runnels.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, concurring in part and dissenting in part.

For the reasons spelled out in the original opinion of our panel, I disagree with the majority's reversal of Shapero's conviction.

### ORDER

A majority of the Judges of this Court in regular active service have voted for rehearing of this case en banc. Sixth Circuit Rule 14 provides as follows:

The effect of the granting of a hearing en banc shall be to vacate the previous opinion and judgment of this Court, to stay the mandate and to restore the case on the docket as a pending appeal.

Accordingly, it is ORDERED that the previous decision and judgment of this Court is vacated, the mandate is stayed and this case is restored to the docket as a pending appeal.

The Clerk will direct the parties to file supplemental briefs and will schedule this case for oral argument as soon as practicable.