*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, MIZER, and HARRELL
Appellate Military Judges

————————————

**UNITED STATES**
*Appellee*

**v.**

**Alvin VALENCIA**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202300240**

————————————

Decided: 5 December 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
*Ryan C. Lipton*

Sentence adjudged 27 July 2023 by a special court-martial convened at Marine Corps Air Station Cherry Point, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: no punishment.

For Appellant:
*Captain Colin P. Norton, USMC*

For Appellee:
*Commander James M. Belforti, JAGC, USN* (on brief)
*Lieutenant Commander James P. Wu Zhu, JAGC, USN* (argued)

Senior Judge KISOR delivered the opinion of the Court, in which Judge MIZER and Judge HARRELL joined.

_____

**PUBLISHED OPINION OF THE COURT**

_____

KISOR, Senior Judge:

Appellant was convicted, contrary to his pleas, at a special court-martial composed of a military judge alone, of one specification of disrespect towards a noncommissioned officer, in violation of Article 91, Uniform Code of Military Justice (UCMJ).[1] He was sentenced to no punishment.

This case is before us on direct appeal pursuant to Article 66(b)(1)(A). Appellant raises three assignments of error: (1) Does the specification of which Appellant was convicted fail to state an offense under Article 91, UCMJ; (2) Is the evidence legally sufficient to prove every element of Article 91, UCMJ; and (3) Is the evidence that a Lance Corporal disagreed with a Corporal factually sufficient to support a conviction of disrespect in deportment toward a noncommissioned officer? We find no prejudicial error and affirm.

## I. BACKGROUND

On 1 February 2023, Appellant went out to lunch. Corporal V called him to ask where he was, and he somewhat vaguely said that he was "at chow."[2] Upon his return to his office, he was given a negative counselling by Corporal V for going out to lunch. During this counselling Corporal V informed Appellant that because he had gone out to lunch without being properly released he would,

_____

[1] The forum consisting of a special court-martial before a military judge alone was created by Congress in 2016 and is codified at Article 16(c)(2)(A), UCMJ, 10 U.S.C. § 816(c)(2)(A) (2018). At this forum, an accused servicemember may not elect trial by a panel of members, and the military judge may not adjudge a sentence that includes a punitive discharge, confinement for more than six months, or forfeiture of pay for more than six months. Article 19(b), UCMJ, 10 U.S.C. § 819(b) (2028); *see* Rule for Courts-Martial (R.C.M.) 201(f)(2)(B)(ii) (2019 ed.)

[2] R. at 57.

consequently, be assigned an escort during working hours.[3] Corporal V testified that "if [Appellant] had to go anywhere, be picked up, anything like that, except during his personal time, which would be chow time, he would be escorted by that NCO and make sure he checks in with him to keep him at work."[4] Corporal V assigned Corporal A to be Appellant's escort.

Appellant, however, did not prefer to have Corporal A as an escort, and interrupted Corporal V to explicitly state his refusal to have Corporal A assigned as his escort. Corporal A, who was within earshot of this counselling, angrily approached Appellant, got within a foot of him, and yelled at him.[5] Several witnesses testified that it was possible that Corporal A became sialoquent while yelling at Appellant. And one witness, Lance Corporal D, testified that he actually saw spit coming out of Corporal A's mouth while he was yelling, and that he heard Appellant ask Corporal A to stop spitting.[6] Corporal V physically inserted herself between Appellant and Corporal A. Sergeant G then directed Corporal A to leave the room, so that Corporal V could finish the negative counselling.

For these interactions, the Government charged Appellant with being disrespectful in deportment to Corporal V, a superior noncommissioned officer then in the execution of her office, by saying to her, "'I will have an NCO escort but it will not be [Corporal A]; [Corporal A] will not be the one who supervises me,' or words to that effect."[7] The Government also charged Appellant with absenting himself from his place of duty without authority when he went out to lunch, and with assaulting Corporal A by pushing him.

The bench trial took a full day, and numerous witnesses testified as to their observations of the incident. In the end, the military judge convicted Appellant of being disrespectful in deportment, but acquitted him of both absenting himself from his place of duty and assault. The military judge sentenced Appellant to "no punishment."[8]

---

[3] R. at 58, 62.

[4] R. at 76.

[5] R at 32. During his direct examination, assistant trial counsel asked Corporal A whether yelling in close proximity to someone's face was "a common way to correct certain Marines?" Corporal A testified in response, "[s]ometimes, not all the time, only the ones that have a hard time understanding things." R. at 32-33.

[6] R. at 138

[7] Charge Sheet.

[8] R at 162, 192. The military judge did not make special findings.

## II. DISCUSSION

Appellant challenges his conviction in several related ways. First, he avers that the specification fails to state an offense. Second, he contends that the evidence adduced at trial is legally insufficient to sustain his conviction. Finally, he argues that the evidence is factually insufficient, applying the revised standard of review for factual sufficiency which is codified in the amended statute that governs this Court's review of courts-martial. We address each assignment of error in turn.

### A. The Specification states an offense under Article 91, UCMJ.

Appellant contends that the specification fails to allege, expressly or by necessary implication, acts constituting disrespect in deportment.

### *1. Standards of review*

On this point, the parties agree on the appropriate standard of review. Whether a specification states an offense is a purely legal issue.[9] And it is axiomatic that Courts review questions of law de novo.[10]

A specification states an offense if it alleges, either expressly or by necessary implication, every element of the offense, so as to give the accused notice and protection against double jeopardy.[11] A specification that does not state an offense provides no protection against double jeopardy.[12] Where, as here, the charge and specification were challenged at trial, we read the wording of the specification narrowly and will consider only the language in the specification to decide whether it states the offense charged.[13]

### *2. The Specification in this case*

The specification at issue in this case alleged:

---

[9] *United States v. Rauscher*, 71 M.J. 225, 226 (C.A.A.F. 2012) (citation omitted).

[10] *Id.* Obviously, any specification that fails to state an offense will also result in legal insufficiency if a person is convicted of it contrary to a plea of not guilty.

[11] *See United States v. Turner*, 79 M.J. 401, 403 (C.A.A.F. 2020); *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006).

[12] *See Montana v. Hall*, 481 U.S. 400 (1987); *see also United States v. Richard*, 84 M.J. 586 (C.G. Ct. Crim. App. 2024).

[13] R. at 148; *see Turner*, 79 M.J. at 403.

In that LCpl Alvin Valencia, did, at or near Marine Corps Air Station Cherry Point, on or about 1 February 2023, was disrespectful in deportment to Cpl [V], a noncommissioned officer, then known by the said accused to be a superior noncommissioned officer, who was then in the execution of her office, by saying to her, "I will have an NCO escort, but it will not be [Corporal A]; [Corporal A] will not be the one who supervises me," or words to that effect.

The elements of this offense, therefore, are:

(1) That the accused was a warrant officer or enlisted member;

(2) That the accused committed certain acts, or used certain language;

(3) That such behavior or language was used toward or in sight or hearing of a certain warrant, noncommissioned or petty officer,

(4) That the accused then knew that the person toward whom the behavior or language was directed was a warrant, noncommissioned, or petty officer;

(5) That the victim was then in the execution of office;

(6) That under the circumstances the accused, by such behavior or language, treated with contempt or was disrespectful to said warrant, noncommissioned, or petty officer;

(7) That the victim was the superior noncommissioned, or petty officer of the accused: and

(8) That the accused then knew that the person toward whom the behavior or language was directed was the accused's superior noncommissioned, or petty officer.

*3. Analysis*

Appellant's argument is twofold: first, that disrespectful language cannot be charged as disrespectful deportment; and second, that the language itself is not disrespectful. The definition of "disrespect" in Article 91, UCMJ, refers back to the explanation of "disrespect" in Article 89 (disrespect to a superior commissioned officer) and includes:

> Disrespectful behavior is that which detracts from the respect
> due the authority and person of a superior commissioned officer.
> It may consist of acts or language, however expressed, and it is
> immaterial whether they refer to the superior as an officer or as
> a private individual. Disrespect by words may be conveyed by
> abusive epithets or other contemptuous or denunciatory lan-
> guage. Truth is no defense. Disrespect by acts includes neglect-
> ing the customary salute, or showing a marked disdain, indiffer-
> ence, insolence, impertinence, undue familiarity, or other rude-
> ness in the presence of the superior officer.[14]

Appellate Defense Counsel conceded at oral argument that if the Govern-
ment today charged Appellant with disrespect for that same statement he
made on 1 February 2023, but substituted the word "language" for "deport-
ment" in the specification, the concept of double jeopardy would bar re-prose-
cution. This is fatal to Appellant's position, because if the specification failed
to state an offense, there would be no double jeopardy bar on retrial.[15] Moreo-
ver, the weakness of Appellant's argument is that although language and de-
portment are both listed in the statute as mechanisms by which a servicemem-
ber may be disrespectful (as opposed to thought, for example), uttered speech
may in fact constitute disrespectful deportment under certain circumstances,
hence the double jeopardy bar would apply in this case.

As the specification in this case alleges every element of Article 91, UCMJ
and was sufficient to provide Appellant notice, we hold that the specification
states an offense.

## B. The evidence is legally sufficient to prove every element.

Appellant asserts the evidence is legally insufficient to support his convic-
tion under Article 91, UCMJ.

---

[14] Manual for Courts-Martial (2024 ed.), pt. IV, para. 15(c)(2)(b) referenced by para.
17(c)(5). The text of this paragraph is unchanged from paragraph 15(c)(2)(b) in the
2019 edition of the Manual.

[15] *See Hall*, 481 U.S. at 404 (stating that the Constitution permits a retrial of con-
viction reversed for a defect in the charging document); s*ee also Richard*, 84 M.J. at
593 (authorizing a rehearing after setting aside a conviction for involuntary man-
slaughter where the specification failed to provide the accused adequate notice of what
act or omission she committed that resulted in the death of her child by asphyxia).

*1. Standard of Review*

To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[16] We review questions of legal sufficiency de novo.[17] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[18]

*2. Analysis*

The Government correctly points out that "courts-martial are a 'notice pleading jurisdiction.'"[19] Further, the Court of Appeals for the Armed Forces (CAAF) has stated that, in a legal sufficiency analysis, all the circumstances of a case can be considered in determining whether disrespectful behavior has occurred.[20]

The crux of Appellant's argument is that "[t]he government provided no evidence of how uttering this particular language was disrespectful under the circumstances."[21] This is incorrect. At trial, Corporal V (who was promoted to sergeant by the time of trial) testified that not only did Appellant state that he would refuse to have Corporal A as his escort, he also interrupted Corporal V as she was telling him that.[22] We have no trouble drawing the inference in favor of the Government that Appellant's deportment while interrupting Corporal V and refusing her decision to appoint Corporal A as his escort was disrespectful under the circumstances, and was within the explanation of "disrespect" contained in the Manual for Courts-Martial. Accordingly, we find the conviction to be legally sufficient.

---

[16] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see United States v. Gutierrez*, 73 M.J. 172 (C.A.A.F. 2014).

[17] Article 66(d)(1), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[18] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (citation and internal quotation marks omitted).

[19] Government Brief at 12 (*citing United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011)).

[20] *See United States v. Najera.* 52 M.J. 247, 249 (C.A.A.F. 2000).

[21] Appellant's Brief at 15.

[22] R. at 77.

## C. The evidence is factually sufficient to sustain a conviction.

Appellant asserts the evidence is factually insufficient to support his conviction of disrespect towards a noncommissioned officer by deportment.

### 1. Standards of review

Regarding factual sufficiency, Congress recently amended Article 66, UCMJ, which now states:

(d) Duties.

(1) Cases appealed by accused.-

(A) In general. In any case before the Court of Criminal Appeals under subsection (b), the Court may act only with respect to the findings and sentence as entered into the record under section 860c of this title (article 60c). The Court may affirm only such findings of guilty as the Court finds correct in law and in fact, in accordance with subparagraph (B). The Court may affirm only the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved.

(B) Factual sufficiency review.

(i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to-

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

(II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

### 2. Deficiency in proof

In *United States v. Harvey*, the CAAF agreed with this Court that that unless both triggering conditions (assertion of error and a specific showing of a

deficiency in proof) are met by an appellant, the amended statute does not require, or even allow, this Court to review the factual sufficiency of the evidence.[23] The CAAF, however, did not further explain what can constitute a "specific showing of a deficiency in proof" because both parties in *Harvey* agreed that that the condition was met.[24]

In *Harvey*, we held that a specific showing of a deficiency in proof meant that "an appellant must identify a weakness in the evidence admitted at trial to support an element (or more than one element) and explain why, on balance, the evidence (or lack thereof) admitted at trial contradicts a guilty finding."[25] The CAAF set aside our opinion in *Harvey* on other grounds. The Parties in this case both correctly agreed at oral argument that, as a matter of law, our published opinion in *Harvey* is no longer binding on us even as to our holdings that the CAAF did not reach.[26] That said, we believe as to the threshold triggering event (assertion of error and specific showing of deficiency in proof), our analysis set forth in *Harvey* remains correct. We therefore hold that a general disagreement with a verdict falls short of a specific showing of a deficiency in proof, and thus will not trigger a full factual sufficiency analysis.[27] Rather, an appellant must identify a weakness in the evidence admitted at trial to support an element (or more than one element) and explain why, on balance, the evidence (or lack thereof) admitted at trial contradicts a guilty finding.

In his brief, Appellant does not explicitly state that what he asserts is a specific showing of a deficiency in proof, apart from his contentions that, (1) as a matter of law, language and deportment are mutually exclusive and cannot

---

[23] *United States v. Harvey*, __M.J.__, No. 23-0239, 2024 CAAF LEXIS 502, at *5 (C.A.A.F. Sep. 6, 2024).

[24] *Id.*

[25] *United States v. Harvey*, 83 M.J. 685, 691 (N.-M. Ct. Crim. App. 2023), *vacated*, *Harvey*, 2024 CAAF LEXIS 502, at *13. In *Harvey*, this Court noted that the parties in that case substantially agreed on the standard for what constitutes a "a deficiency in proof." *Harvey*, 83 M.J. at 691. Nonetheless, the CAAF noted that "the NMCCA and the parties have advanced notably different views on this question." *Harvey*, 2024 CAAF LEXIS 502, at *5.

[26] In federal court, a "reversed" opinion can be cited for principles that were not reversed, but an opinion that has been "vacated" has no precedential authority. *See Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991). Black's Law Dictionary, somewhat tautologically, defines both "set aside" and "vacated" as including each other. Black's Law Dictionary, Sixth Ed. 1990, at 1372 and 1548.

[27] *Harvey*, 2024 CAAF LEXIS 502, at *5.

overlap; and (2) the Government failed to prove any deportment. He simply contends generally that "[t]he government failed to introduce evidence to satisfy its burden that any action by LCpl Valencia – even interrupting her – actually disrespected [Corporal V]."[28] The Government, for its part, argues that Appellant fails to show a deficiency in proof at all. According to the Government, Appellant does not explain a weakness in the evidence, apart from a disagreement with the conclusion of the military judge that the testimony showed that Appellant was disrespectful under the circumstances. And Appellant does not address the Government's point on this issue in his Reply. At oral argument counsel for Appellant again argued that the language used by Appellant in contradicting the decision by Cpl V to assign Cpl A as his escort was neither disrespectful nor qualified as deportment. But, again, this is nothing more than a disagreement with the factfinder's conclusion, not a claim of deficiency in the evidence presented on the question.

We hold that in this case Appellant has not made a specific showing of a deficiency in proof to trigger full factual sufficiency review under Article 66, UCMJ.[29] The testimony did not substantively conflict in major respects. The words used by both Corporal V and Appellant during the counselling were not in dispute. This case does not require us to resolve a credibility dispute as to what was said, or to otherwise resolve materially inconsistent evidence or conflicting testimony.[30]

---

[28] Appellant's Brief at 18.

[29] *Harvey*, 2024 CAAF LEXIS 502, at *5.

[30] Even assuming that disagreement with a conviction based on largely witness testimony can constitute a deficiency in proof sufficient to trigger factual sufficiency review, and giving appropriate deference to the fact that the military judge saw and heard the witnesses, we would not be clearly convinced that the verdict is against the weight of the evidence. The evidence in this case was largely testimonial and we would afford the military judge a high level of deference because we did not see the witnesses testify.

## III. Conclusion

After careful consideration of the record, the briefs of appellate counsel, and the excellent oral argument of both parties heard on 6 November 2024, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[31]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[31] Articles 59 & 66, UCMJ.