11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Josue Jonnathan Pena

Appellant

Vs. Nos. 11-02-00259-CR,
11-02-00260-CR, & 11-02-00261-CR B Appeals from Howard County

State of Texas                                                                                                                          

Appellee

 

After a
joint trial of three indictments, the jury convicted Josue Jonnathan Pena of
three sexual assaults of M.A.,[1]
a child who was younger than 17 years of age.[2]  The jury assessed appellant=s punishment in Cause No.
11-02-00259-CR  (penetration of the
anus) at confinement for 6 years and a fine of $1,000, in Cause No.
11-02-00260-CR  (penetration of the
female sexual organ) at confinement for 3 years and no fine, and in Cause No.
11-02-00261-CR (penetration of the mouth) at confinement for 3 years and no
fine.  The trial court ordered the
sentences to be served consecutively.[3]  We affirm.         

                                                                Background
Facts








The
indictments charged that appellant committed the offenses in Howard County on
or about December 6, 2001, and that the child was then younger than 17 years of
age and not his spouse.  The child made
a positive identification of appellant, and the State=s expert witness testified that the DNA
sample which was found on a pad from the Asexual assault kit@ from the complainant was consistent with the DNA profile from
appellant and that appellant could not be excluded as a contributor of that
DNA.  The State=s expert also gave her opinion that appellant
was the source of the semen found after the complainant was assaulted.  The sexual assault nurse examiner testified
that she made a physical examination of M.A. which showed that the child=s anus had been recently dilated and torn,
indicating a recent penetration of the anus. 
The sexual assault nurse examiner also testified that the physical
examination of M.A. showed a laceration of the hymen which was evidence of  Aa violent penetration of the vagina.@ 

After the
State rested, appellant took the stand to deny the child=s claim that he forced her to get into his
car and that he forced her to submit to the sexual contacts.  Appellant claimed that the complainant got
into his car voluntarily, that the complainant gave him Aoral sex@ while he was driving, and that they had consensual intercourse after
he parked by some trees.  Appellant also
testified that M.A. told him that she Awas 17, almost 18 years old@ and that he did not penetrate her anus.  Appellant claimed that M.A. got mad at him when he refused to
give her money and when he would not give his telephone number to her.

                                                                   Points
of Error

Appellant
presents the same seven points of error in all three briefs.  He argues that the trial court erred: (1) in
failing to allow him to present evidence that M.A.=s reputation for truthfulness was not good;
(2) in not allowing him to prove why M.A. had moved from her parents= home in Lamesa to her brother=s home in Big Spring; (3) in failing to
excuse the juror, Irma Morales, Aat the time she made it known@ that she knew members of M.A.=s family and that she would have a hard time giving appellant a fair
trial; (4) in failing to allow appellant=s lawyer to Ainquire
further of the juror, Irma Morales,@ concerning her knowledge of M.A. and M.A.=s family; (5) in not allowing appellant=s lawyer to Aquestion Irma Morales about her conversations with other jurors before
her discharge@; and (6) in denying his motion for mistrial Abased on the fact that some jurors could not
hear testimony during the trial.@  Appellant argues in Point of
Error No. 7 that the trial court abused its discretion in ordering the
sentences Ato run consecutively@ because there was Ano basis for stacking the sentences.@

                                                                Reputation
of Child








Appellant
argues in Point of Error No. 1 that the trial court erred in not allowing him
to present evidence that Athe victim=s
reputation for truthfulness was not good.@  The record shows that
appellant=s attorney called Dena Jefferson as a
witness, that this witness had known M.A. for two years, that they had gone to
school together at Lamesa High School, and that the witness said that she knew
M.A.=s reputation in the community.  The State objected, and the following
proceedings were conducted outside the presence of the jury:

[DEFENSE
COUNSEL]: Ms. Jefferson, do you know [M.A.]?

 

A: Yes.

 

Q: Do you
know her reputation in the community?

 

A: Yes.

 

Q: Do you
have an opinion about her reputation with regard to being a truthful person?

 

A: Yes.

 

Q: What is
your opinion?

 

A: I
think she=s lying.  (Emphasis added)

 

Appellant=s attorney argued to the court that Athe character of [M.A.] is in question,@ that TEX.R.EVID. 405 permits him to offer
this proof, and that he Awould like that to be the bill of exception.@ 
After it sustained the State=s objection and excused the witness, the court permitted appellant=s attorney to recall Jefferson Afor purposes of the bill of exceptions.@ Her additional testimony still did not show
the reputation of  M.A.  It only showed Jefferson=s opinion that M.A. Alies to get what she wants.@  It
did not show that this was the Areputation@ of
M.A. in the community.  Trial courts are
given Agreat discretion@ in their evidentiary decisions, and
appellant has not shown an abuse of that discretion.  See Montgomery v. State, 810 S.W.2d 372, 391
(Tex.Cr.App.1991).  Point of Error No. 1  is overruled. 

                                                       Reason
for Move from Lamesa








Angelica
Arredondo was called as a witness by the State, and she testified through an
interpreter that M.A. was living with her family on December 6, 2001.  During the cross-examination of this witness
by appellant=s attorney, Arredondo testified that M.A. had
been living with M.A.=s
parents in Lamesa before M.A. came to Big Spring to stay with Arredondo, M.A.=s brother, and their children.  Relevant portions of the reporter=s record read as shown:

Q: [M.A.]
was living with her own natural, biological parents before coming to stay with
you, correct?

 

A: Yes,
sir.

 

Q: And
[M.A.] was having trouble?

 

[PROSECUTOR]:
Objection, Your Honor; personal knowledge. 
No foundation has been laid on that.

 

THE COURT:
Sustained.

 

After the jury was
removed from the courtroom, the prosecutor asked the following questions on
voir dire examination of the witness:

Q: Do you
know why [M.A.] came to Big Spring?  Yes
or no.

 

A: Yes.

 

Q:
Okay.  Why?

 

A: I don=t know. 
I mean, I cannot explain.

 

                                                           *    *   
*

 

THE
INTERPRETER: Okay.  She is saying no
quedo, AI don=t want to say.@

 

[DEFENSE
COUNSEL]: And to that I would ask the Court to compel a response, Your Honor.

 

THE COURT:
She needs to answer the question.

 

A: All I
know was that - - all I know, she wanted to come, that she wanted to keep
studying.  Some problems she had in
school.  I don=t know. 
I never asked.  It=s her problem.  And I took her into my home because she wanted to keep studying.

 

Q: So you
don=t really know personally why?

 

[DEFENSE
COUNSEL]: Object to leading.








A: She had a problem with
a student.

 

Q: How do you know?

 

A: Because my in-laws - -
my in-laws called and said that - - called and said the principal did not want
her to attend school there anymore.

 

Q: So your in-laws told
you; is that correct?

 

A: Yes.

 

Q: You don=t know if there were any actual problems in
Lamesa?

 

A: No.

 

[PROSECUTOR]: Your Honor,
we would re-urge the objection, she has no personal knowledge.  In addition, would suggest there is no
relevancy to that particular issue in this case.

 

[DEFENSE COUNSEL]: And to
which I respond I am entitled to inquire into present sense of impression at
that time and that it goes along with the Defense=s theory that you heard me talk about in the
opening statement that the child was having problems.  And I think I am certainly entitled to go into that on
cross-examination.

 

THE COURT: Sustain the
objection.  (Emphasis added)

 

            This testimony was not admissible
as a APresent Sense Impression@ under TEX.R.EVID. 803(1) (Hearsay
Exceptions: Present Sense Impression). 
This was not a statement describing or explaining an event or condition Amade while the declarant was perceiving the
event or condition, or immediately thereafter.@   Moreover, appellant has not
shown an abuse of discretion by the trial court in the exclusion of this
testimony.  Montgomery v. State,
supra.  Point of Error No. 2  is overruled.

                                                                     The
Juror, Irma Moralez








Irma
Moralez was one of the jurors who were selected in this case.  The record shows that, after the State
rested, the court received a note which Juror Moralez handed to the bailiff Aduring the last break.@ 
Appellant=s attorney asked the court to Aexcuse that juror and move to the alternate.@  The
reporter=s record shows a discussion outside the
presence of the jury where Juror Moralez confirmed that she had written the
following note:

Judge,
does it matter that I know the family members of the victim?  Because we lived in the same neighborhood in
Lamesa.  I had no idea who the girl is
though.

 

Juror
Moralez said that she did not know who M.A. was at the beginning of the trial
but that, when the family came in, the parents looked familiar.  Juror Moralez said that she did not really
know them, that they did not visit in each other=s homes, and that they did not socialize together.  Juror Moralez said that it made her Afeel kind of nervous@ and that she Awould have a hard time giving [appellant] a fair trial.@  The
court did not excuse this juror at that time; however, after the State closed,
the court decided to Alet
Juror Moralez go@ and to use the alternate juror which had
been selected.  Appellant asked to
examine Juror Moralez before she left to Amake sure she [had not] talked to the rest of the jury@ about M.A.=s family. 

There is
no showing of any harm to appellant from the trial court=s actions in refusing to grant appellant=s motion to excuse Juror Moralez and in
refusing to allow appellant=s attorney to question that juror in more detail.  The record shows that the trial court
excused Juror Moralez and seated the alternate juror before the jury began its
deliberations.  Even if we were
convinced that the original rulings were in error, TEX.R.APP.P. 44.2(b) would
require us to disregard any error in those rulings.  If there was a problem, it was resolved by the subsequent
ruling.  Points of Error Nos. 3 and 4
are overruled.  

The trial
court did not abuse its discretion in refusing to permit the examination of
Juror Moralez Aabout her conversations with other jurors
before her discharge.@  See and compare Huseman v. State, 96 S.W.3d
368, 374 (Tex.App. - Amarillo 2002, pet=n ref=d), which held that the trial court did not
err in refusing to permit appellant to engage in a Afishing expedition@ without an affidavit showing reasonable
grounds for a factual inquiry.  








When
appellant=s attorney asked to examine Juror Moralez
before her discharge, the trial court told him that he could do that later by
affidavit.  Appellant argues that this
ruling was incorrect because TEX.R.EVID. 606(b) would not permit him to secure
her affidavit.  The trial court was
correct.  Subject to two exceptions
which are not applicable,[4]
Rule 606(b) does not permit a juror to impeach the verdict by testimony or
affidavit about any matter or statement Aduring the jury=s deliberations@; however, the record shows that the jury had not begun its
deliberations at the time Juror Moralez was excused.  For a good discussion of Rule 606(b), which applies in both civil
and criminal cases, see Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362,
371 (Tex.2000):

Finally,
we consider the alleged conversation between [two of the jurors] during a trial
break.  Jackson argues that the
conversation should not be considered Adeliberations@ and
therefore barred by Rule 606(b) and Rule 327(b).  We agree.  The Texas Rules
of Civil Procedure use the term Adeliberations@ as
meaning formal jury deliberations - - when the jury weighs the evidence to
arrive at a verdict....Clearly, here the rule refers to formal deliberations
and not incidental discussions that might occur between jurors during
trial.  

 

Point of Error No. 5 is
also overruled. 

                                                                Motion
for Mistrial

The
following proceedings were heard in open court after the jury returned its
verdicts that appellant was guilty of all three offenses.  The jury had been excused before the
punishment phase began, and the reporter=s record showed the following:

THE COURT:
I want to put this on the record....I received a note from the jurors [Mary
Vick and Doris Smith which] says: A[I]s the microphone on for the witnesses?  Several of us cannot hear.@

 

This note
was simply handed to me, and I turned the microphone up and said nothing
further about it.  Okay?  But it was a note handed to me by a juror,
so - - and I=m not going to destroy it.

 

[DEFENSE
COUNSEL]: Can I inquire of the Court when you received it?  What, yesterday, today?

 

THE COURT:
Oh, yeah, it was yesterday morning early [first day of testimony].  I mean, it was pretty quick.  And it said several of us cannot hear, so -
- as a matter of fact, it was real early...so I turned the microphone up.

 

                                                           *    *   
*

 

[DEFENSE
COUNSEL]: While we=re on
the record, I would ask for a mistrial based on jurors not hearing testimony. 

 








The two
jurors who signed the note were brought into open court, one at a time, for
examination by the court.  Juror Mary
Vick said that it Ahelped
a lot@ when the microphone was turned up but that
some of the witnesses were Avery soft-spoken@ and difficult to hear.  In
answer to the court=s questioning,
she agreed that she was able to hear most of the testimony and that she Aprobably@ did not ever feel like she should have raised her hand and asked for
clarification.  Juror Doris Smith agreed
that she was Aable to hear the proceedings@ after the microphone was adjusted.  She said that they sent the note to the
judge during the Afirst
break@ and that she did not have any trouble after
the microphone was turned up.  Appellant
has not shown an abuse of discretion by the trial court in overruling the
motion for mistrial.  Point of Error No.
6 is overruled.

                                                             Stacking
the Sentences

Appellant
argues in his final point of error that the trial court Aabused its discretion@ in sentencing appellant to serve his
sentences consecutively, rather than concurrently, because Athere was no basis for stacking the
sentences.@  As
noted in Footnote No. 3, Section 3.03(b)(2)(A) now provides that, if the
accused is found guilty of more than one offense arising out of the same
criminal episode, the Asentences
may run concurrently or consecutively@ if each sentence is for a conviction of an offense under Section
22.011(a)(2).  Each of appellant=s convictions is for an offense under Section
22.011(a)(2), and they arose out of the same criminal episode.  The trial court has the discretion to order
either cumulative or concurrent sentences under TEX. CODE CRIM. PRO. ANN. art.
42.08 (Vernon Supp. 2003).  See also
Nicholas v. State, 56 S.W.3d 760, 764 (Tex.App. - Houston [14th Dist.] 2001,
pet=n ref=d).  Point of Error No. 7 is overruled.


                                                                This
Court=s Ruling

The
judgments of the trial court are affirmed.

 

BOB
DICKENSON

SENIOR
JUSTICE

 

April 17, 2003

Publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Arnot, C.J., and 

McCall, J., and Dickenson, S.J.[5]












[1]The child will be identified by her initials only.





[2]See TEX. PENAL CODE ANN. '
22.011(a)(2) (Vernon 2003).  It is a
felony of the second degree to cause the penetration of the anus, female sexual
organ, or mouth of a child.  A Achild@ is a person
younger than 17 years of age who is not the spouse of the defendant.





[3]See TEX. PENAL CODE ANN. '
3.03(b)(2)(A) (Vernon 2003).  The
sentences can run consecutively if they are for offenses under Section
22.011(a)(2).





[4]The exceptions are: (1) proof of  any Aoutside
influence@ which was improperly brought to bear upon a juror and
(2) rebuttal of a claim that a juror was Anot
qualified@ to serve.





[5]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.