NO. 07-00-0427-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 30, 2002

_____

TIMOTHY LEWIS HUSEMAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. A12869-9712; HONORABLE WILLIAM R. SHAVER, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

Appellant Timothy Lewis Huseman challenges his conviction of aggravated assault with a deadly weapon and the resulting punishment of 20 years confinement in the Institutional Division of the Department of Criminal Justice and a $10,000 fine. In seven points of error, he asserts the trial court reversibly erred in 1) & 2) refusing his attempt to prevent a further retrial of this matter in violation of the double jeopardy prohibitions

contained in both the federal and state constitutions; 3) not allowing him to appropriately address the issue of juror misconduct; 4) refusing to reveal the name of the juror who provided information as to juror misconduct; 5) failing to find he was deprived of effective assistance of counsel when trial counsel failed to address and investigate the issue of competency and capacity; 6) failing to find he was deprived of effective assistance of counsel when trial counsel advised him to elect the jury to set his punishment, which made him liable for a sentence greater than would otherwise have been permissible; and 7) allowing the prosecutor to make improper remarks intended to inflame the passions and prejudices of the jury. Disagreeing that reversible error has been shown, we affirm the judgment of the trial court.

A proper discussion of the first two points requires us to recount the involved procedural history of this case. Appellant was charged with committing aggravated assault with a deadly weapon on his former wife. On May 5, 1998, a jury was selected and seated to try the case. The next day, before the jury was returned to the courtroom, appellant announced that he wished to withdraw his plea of not guilty and proceed upon a plea of guilty with the jury setting his punishment. After admonishments by the trial court, the guilty plea was accepted. The jury was then brought in, sworn, appellant entered his plea, evidence was stipulated and the punishment hearing commenced. The victim was in the process of testifying when the court recessed for the noon hour. As the witness was stepping down from the witness box at the time of the noon recess, she asked a juror what was written on the juror's badge. Because the degree of the impairment of the victim's

eyesight by the alleged assault was material, appellant sought, and was granted, a mistrial.

After the granting of the mistrial, the trial was rescheduled for May 19, 1998, but because of the death of the victim's mother, it was continued until June 16, 1998. The case was called for trial on June 16, 1998, at which time appellant moved to withdraw his guilty plea and waiver of jury trial. Outside the jury's presence, the trial court then heard argument on the motion, including a representation by the State that, having expected the trial to continue on punishment alone, it could not be ready for a guilt/innocence trial because of the absence of a crucial witness.

Reasoning that it was untimely presented, the trial court denied appellant's motion to withdraw his guilty plea and, without appellant entering a plea to the indictment, proceeded to conduct a punishment hearing which resulted in a jury-assessed punishment of 15 years confinement in the Institutional Division of the Department of Criminal Justice and a $1,000 fine. On direct appeal, this court reversed the conviction and remanded the matter to the trial court for retrial. In doing so, we determined the trial court could not grant a mistrial limited to the punishment phase alone. The mistrial must apply to the whole trial and because of that, any activities in the trial preceding the mistrial were a nullity and a retrial was required. *See Huseman v. State*, 17 S.W.3d 704, 706 (Tex.App.--Amarillo 1999, pet. ref'd).

3

Subsequent to our reversal, appellant applied for habeas corpus relief from the trial court, which was denied. On February 21, 2001, we affirmed the trial court's denial of that relief. *See Huseman v. State,* No. 07-00-0394-CR (Tex.App.--Amarillo Feb. 21, 2001, no pet.) (not designated for publication), 2001 WL 170411. Appellant now argues that his application for writ of habeas corpus was "improvidently" denied by this court and "must be reviewed . . . by this court with respect to the egregious conduct of the trial court at the second prosecution attempt." In pursuing this argument, appellant posits that the prosecution's failure to have witnesses present and ready to proceed at the time he sought to withdraw his plea "adversely affected its ability to prove Appellant guilty beyond a reasonable doubt and as such they would have certainly risked a not guilty verdict by a jury and an absolute bar against further attempts at prosecution on the actions asserted." Thus, appellant continues, retrial should be barred on the basis that the government should not be allowed, through "the combined process of prosecutorial failings and egregiously improper judicial rulings to prevent the perceived travesty of the possibility of the prosecution not being able to meet their burden of proof based on the unavailability of witnesses. . . ." He concludes that the federal constitution "does not give the judiciary the privilege of making determinations which undermine one constitutional right of a person so as to protect another portion of the government [which] desires to subject a person to prosecution on multiple occasions for the same offense." Appellant's argument requires a discussion of the whole double jeopardy concept.

4

The risk associated with double jeopardy, as the name implies, is that of a second prosecution for the same offense after an acquittal, conviction or multiple punishments for the same offense. *Ex parte Broxton*, 888 S.W.2d 23, 25 (Tex.Crim.App. 1994), *cert. denied*, 515 U.S. 1145, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995). Thus, inherent within the concept of double jeopardy lies the need for two distinct proceedings, which are "essentially criminal" in nature. *See Breed v. Jones*, 421 U.S. 519, 527-28, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1995). There are three possible events that would make the double jeopardy doctrine applicable due to termination of the original jeopardy: 1) an acquittal; 2) a trial court's directed acquittal because of the insufficiency of the evidence; or 3) a determination upon direct appeal that the evidence was insufficient to sustain the conviction. *Vanderbilt v. Collins,* 994 F.2d 189, 195 (5th Cir. 1993); *State v. Vanderbilt*, 973 S.W.2d 460, 462 (Tex.App.--Beaumont 1998, pet. ref'd).

In *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App. 1996), the court explained the general rule that a mistrial granted at the defendant's request poses no inhibition to retrial under either the federal or state constitutions. The reasoning underlying the rule, the court noted, was that a defendant's motion for mistrial is considered "a deliberate election on his part to forego his valued right to have his guilt or innocence determined before the first trier of fact." *Id.* at 698 (quoting *United States v. Scott*, 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)). However, as the court explicated, there is an exception to that general rule, under both federal and state provisions, in instances in which the government, acting through its representatives, purposefully forces the termination of a trial in order to repeat

5

it under more favorable circumstances.  In such instances, even in the event of a defendant's successful motion for mistrial, the double jeopardy provisions are violated.  *Id.* at 698-99.  The court went on to observe that under our state double jeopardy provisions, "a successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request."  *Id.* at 699.

In *Ex parte Davis*, 957 S.W.2d 9 (Tex.Crim.App. 1997), *cert. denied*, 523 U.S. 1023, 118 S.Ct. 1307, 140 L.Ed.2d 472 (1998), the Court had occasion to consider the question whether the double jeopardy prosecutorial misconduct rule also applied in instances in which the trial proceeded to a verdict, but was reversed on appeal because of prosecutorial misconduct.  En route to deciding that the rule was not applicable, and even though it described the conduct of the prosecutor in the trial court as "reprehensible," the high court determined that the *Bauder* rationale was not dispositive because of what the Court described as "a most significant difference," namely, that the conviction was reversed on appeal.  *Id.* at 13.  The logical reason for the distinction is that the type of prosecutorial misconduct with which the *Bauder* court was concerned was of such a nature as to deprive appellant of his due process right to trial before an impartial jury and the possibility that without such misconduct an acquittal might result.  *Id.* at 13-14.  *See also* Ex parte Cooks, 979 S.W.2d 53, 56 (Tex.App.--Amarillo 1998, pet. ref'd).

In arguing that double jeopardy is applicable, appellant relies on, and quotes extensively from, a plurality decision by the United States Supreme Court in *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). In that case, the plurality held that a trial judge abused his discretion when, on his own motion, he declared a mistrial in order to enable potential government witnesses to consult with their own attorneys before giving testimony that might tend to incriminate them. In doing so, the plurality noted the reprosecution after a mistrial has unnecessarily been declared "obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." *Id.* at 483. However, as relevant here, the *Jorn* Court expressly noted:

> Certainly it is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the Government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense. Thus, for example, reprosecution for the same offense is permitted where the defendant wins a reversal on appeal of a conviction. [citations omitted] The determination to allow reprosecution in these circumstances reflects the judgment that the defendant's double jeopardy interests, however defined, do not go so far as to compel society to so mobilize its decision-making resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error.

*Id.* at 483-84.

Indeed, in *Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987), the Court explicated:

It is a "venerable principl[e] of double jeopardy jurisprudence" that [t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict [citation omitted] poses no bar to further prosecution on the same charge . . . . [citation omitted] "Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they are now in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest."

*Id*. at 402-03 *(citing United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)).

The rule against imposition of double jeopardy after appeal and reversal is particularly applicable in a case such as this one, in which the trial court made a ruling that an appellate court found to be erroneous. If the act of making a ruling during the harried atmosphere of a trial, which is later determined to be erroneous, constitutes an "egregious" action by a judge sufficient to prevent retrial, there are very few judges indeed who would not be subject to that attack. Suffice it to say, the trial judge's conduct was not egregious, double jeopardy is not applicable, and appellant's first two points are overruled.

The impetus of appellant's third-point contention arises from a newspaper story in which the reporter wrote that after the verdict in this case, one juror commented, "[r]egardless of the crime, we struggled with the fact that we were deciding the life of

8

another human being.  But there was no problem with the sentence itself.  We had pretty much determined that it would be the maximum."

Appellant argues this statement from an anonymous juror made it very "clear" that an impermissible decision had been reached by the jurors as to the sentence to be imposed prior to the commencement of their deliberations.  Because he had been unable to obtain information from the jurors about this question, appellant subpoenaed the jurors to appear at his new trial hearing.  He argued that he did not intend to invade the thought processes of the jurors, but wanted to interrogate each of them independently about the source of the information mentioned in the article.  The trial judge refused to allow him to do so and discharged the subpoenaed jurors.  Hence, this issue.

Texas Rule of Evidence 606(b) provides, "[u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment."  The only exception to that broad prohibition is that a juror may testify as to whether any outside influence was improperly brought to bear upon any juror or to rebut a claim that the juror was not qualified to serve.  The limitation upon post-trial juror testimony is intended to encourage open discussion among jurors during deliberations, to promote the finality of judgments, and to protect jurors from harassment by unhappy

9

litigants seeking grounds for a new trial. *Sanders v. State*, 1 S.W.3d 885, 888 (Tex.App.-- Austin 1999, no pet.).

In order to be entitled to a factual hearing on instances of alleged jury misconduct that might not be within the bar of Rule 606(b), those allegations must be supported by an affidavit showing reasonable grounds for a factual inquiry. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex.Crim.App. 1994); *Reyes v. State*, 849 S.W.2d 812, 816 (Tex.Crim. App. 1993). Appellant was unable to obtain such an affidavit. Richard Orr, the reporter who took the statement from the unidentified juror, testified at the new trial hearing and averred that he did not understand it to mean that the jurors had already made up their minds as to the sentence to be assessed prior to the beginning of their deliberations. In this state of the record, the trial judge did not abuse his discretion in refusing to permit the examination of the jurors. To have done so would merely have permitted appellant to engage in a "fishing expedition" without any of the prescribed and defined limitations. Appellant's third point is overruled.

In his fourth point, appellant complains that the trial judge committed reversible error by failing to require the newspaper reporter to reveal the name of the juror. By failing to do so, appellant argues, he was deprived of the last means available to him to show jury misconduct. Perusal of the record reveals that counsel asked the reporter if he knew who the juror was and received an affirmative answer. He then asked the reporter if he would be willing to divulge the name of the juror to the court and the reply was that he would not

be willing to do so. However, counsel never asked the trial court to order the reporter to reveal the name and continued his examination by asking another unrelated question. Even assuming arguendo that appellant was entitled to the answer, a holding we specifically do not make, by failing to request the trial court to order the answer and obtain a ruling on the request, appellant waived any appellate complaint. *See* Tex. R. App. P. 33.1(a). Appellant's fourth point is overruled.

In his fifth point, appellant asserts that his counsel was ineffective because he failed to address his competency to stand trial, be held accountable for his actions and properly investigate "all facts and witnesses necessary to provide effective representation." The criteria by which the required effectiveness of counsel under both the state and federal constitutions are judged are those articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex.Crim.App. 1986). In *Strickland,* the Court adopted a two prong test to determine ineffectiveness of counsel. Under the first prong, a defendant must show 1) counsel's performance was so deficient that counsel failed to function as the "counsel" guaranteed by the sixth amendment to the federal constitution, and 2) that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. To show prejudice under the second prong, the defendant must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability, the Court explained, is one sufficient to undermine confidence in the outcome. *Id.* at 694.

Additionally, under the *Strickland* test, the defendant bears the burden of proving ineffective assistance. When reviewing a claim of ineffective assistance, the appellate court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, that is, the defendant must overcome the presumption that under the circumstances the challenged action might be considered sound trial strategy. *Id*. at 689.

The record reveals appellant's trial counsel averred he had consulted with psychologists Dr. Mark Cunningham and Dr. Randall Price, assertedly with the expectation of using one of them as an expert witness. However, after the consultation, neither of them was called to testify. It also reveals appellant's counsel had filed his motion for psychiatric examination and appointment of a mental health expert to examine appellant. This motion was later withdrawn by appellant at a pretrial hearing. Viewed in the light by which we must view them, it is a reasonable conclusion that counsel determined that this type of testimony would not be helpful to appellant. Appellant asserts in his brief that his family procured funds for the purpose of securing psychological testimony and it was only at trial, and against his wishes, that he was informed no such testimony would be utilized. However, nothing in the record before us supports such statements, and we are bound by the record. Additionally, and parenthetically, in his post-trial pro se "Motion for Order to Show Cause Why Van Williamson Should Not be Removed as Appellate Counsel," appellant does not include the failure to obtain and use psychological testimony in his list of reasons why trial counsel should be removed. Because the record does not support

12

appellant's claim of ineffective assistance of counsel in this regard, his fifth point is overruled.

The thrust of appellant's sixth point assertion of ineffective assistance of counsel is that by advising him to elect to have the jury assess his punishment, he became subject to a heavier sentence than would have been permissible had the judge assessed the punishment. In support, and without citation of relevant authority, appellant posits that when a defendant has been convicted and the conviction has been reversed, upon a second conviction, a judge may not impose a sentence greater than the one previously assessed while a jury is not limited in that respect. That being so, he concludes, by advising him to elect jury sentencing, trial counsel was ineffective.

In espousing this theory, apparently appellant relies upon the holding of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), and its progeny which stand for the proposition that if, after a reversal and remand, a trial judge imposes a sentence more severe than that originally assessed, to prevent judicial vindictiveness, the reasons for his doing so must affirmatively appear. *Id.* at 726. However, in an instance such as this one in which the second trial was before a different judge, the *Pearce* presumption of vindictiveness is not applicable. *Jackson v. State*, 766 S.W.2d 518, 521 (Tex.Crim.App. 1988). That being true, whether or not trial counsel advised appellant to elect to have the jury set his sentence, and the record does not show

13

any such advice, the fact that appellant did so with a bad result is not sufficient to overcome the presumption that counsel's action was within the acceptable range of reasonable trial performance. We also note that at the time the trial judge allowed trial counsel to withdraw, he commented that counsel had been effective and "did an excellent job." Appellant's sixth point is overruled.

In his seventh point, appellant argues that the trial court reversibly erred by allowing the prosecutor to present an argument unconstitutionally intended to inflame the passions and prejudices of the jury. This is directed at the portion of the prosecutor's argument in which he told the jury, "[a]nd if you can roll all of that anger and that hatred and that viciousness in that hammer and those six blows into probation, then he can ride the elevator down with you . . . ." There was no trial objection to this argument.

It is the general rule that a defendant's failure to timely object to a jury argument or, in the event of a timely objection, the failure to pursue an adverse ruling, forfeits the defendant's right to complain about the argument. *Lopez v. State*, 860 S.W.2d 938, 943 (Tex.App.--San Antonio 1993, no pet.) (citing *Briddle v. State*, 742 S.W.2d 379, 389 (Tex. Crim.App. 1987)); *see also* Tex. R. App. P. 33.1(a). The exception to that general rule is if the argument is so prejudicial that an instruction to disregard would not be sufficient to remove the harm. *Briddle*, 742 S.W.2d at 389. This argument does not fall within that category.

Moreover, even if the question had been preserved for appellate review, the argument would not require reversal. It is axiomatic that proper jury argument must fall within one of four categories; namely, 1) a summary of the evidence, 2) a reasonable deduction from the evidence, 3) an answer to opposing counsel's argument, and 4) a plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94-95 (Tex.Crim.App. 1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993). Even so, an improper jury argument is only reversible if it is extreme or manifestly improper, it violates a mandatory statute, or if it injects new facts that are harmful to the defendant. *Id.* In that regard, the portion of the prosecutor's argument in which he states, "if you can roll all of that anger and that hatred and that viciousness in that hammer . . ." is reasonably related to the testimony concerning appellant's conduct at the time of the assault both by the other witnesses and the victim. The portion of the argument that if appellant is given probation, "he can ride the elevator down with you," is similar to arguments held to be proper pleas for law enforcement in *Martinez v. State*, 715 S.W.2d 725, 727 (Tex.App.--Houston [14th Dist.] 1986, pet. ref'd) and *Lopez v. State*, 860 S.W.2d at 942-43. Appellant's seventh point is overruled.

In summary, all of appellant's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Chief Justice

Publish.

15