NO. 12-02-00152-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


BRIAN EDWARD COLLIER,
§
 APPEAL FROM THE 8TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 RAINS COUNTY, TEXAS

 

MEMORANDUM OPINION


 Appellant Brian Edward Collier ("Appellant") was convicted of murder. The jury sentenced
him to twenty-three years of imprisonment, with no fine. We affirm.


Background

 Appellant went to the home of Brad Davis ("Davis"), the victim, in Emory, Texas, on the
evening of Saturday, September 30, 2000. Davis had lived with Appellant in the past, and Appellant
contended Davis owed him money for rent. After arguing in the house, the two walked outside and
were standing beside Appellant's truck when Appellant shot Davis. The bullet severed Davis's
spinal cord at the base of his neck. Several of Davis's friends were at his house at the time of the
shooting, and one of them called 9-1-1. Davis's friends immediately began administering CPR,
which kept Davis alive until the ambulance arrived. Immediately after the shooting, Appellant said
he shot Davis. He also said several times that it was an accident, and a few minutes later said that
Davis had accidentally shot himself. 

 The Emory police chief was at the police station when the 9-1-1 call came in. He heard the
dispatcher mention that someone had been shot, glanced at the address, and left the police station. 
He arrived at the scene within a minute of the 9-1-1 call. The first person he met there was
Appellant. Not knowing who was shot, he asked Appellant what had happened, and Appellant said
that he had shot Davis. After that statement, the officer handcuffed Appellant and retrieved
Appellant's pistol from the seat of Appellant's truck. Later, after receiving his Miranda (1) warnings,
Appellant said that Davis had grabbed the gun and had accidentally shot himself.

 Davis was lying beside the truck. Although there was a puddle of blood where Davis was
lying, there was no blood on the driver's seat of Appellant's truck where one would anticipate
finding blood if Davis had shot himself. After Davis was air-flighted to a Tyler hospital, local police
conducted a test of Davis's hands. The test indicated that he had not fired a weapon. 

 Appellant was indicted for murder. (2) He pleaded not guilty and elected a trial by jury. At
trial, the trauma room doctor testified that a single bullet had entered Davis's nostril, traveled
through the lower part of his brain, and severed his spinal cord. Part of the bullet then went into his
mid-brain. Without immediate first aid, Davis would have died at the scene. Once he arrived at the
hospital, it was determined that no surgical intervention would save his life. He was stabilized and
placed on life support from which he was eventually removed. He died several minutes after being
removed from life support. 

 The medical examiner who performed the autopsy testified that, due to the severe nature of
the injury and the onset of the physical anomalies noted in the autopsy, Davis's prognosis was poor. 
The examiner noted that Davis was developing infections and pneumonia that would have resulted
in his death, possibly within days or weeks, even had he remained on the life-support system. The
doctor also testified that, with the severing of the spinal cord, Davis would have fallen down
immediately when shot. The doctor concluded that, if Davis had been reaching across the truck seat
when he shot himself as Appellant maintained, he would have remained on the truck seat, and his
body would not have fallen near the rear of the truck where witnesses testified it was located.

 Several witnesses testified that Davis was afraid of Appellant. Davis's brother testified that
Davis had borrowed a shotgun from him and a .44 caliber pistol from their father to protect himself
from Appellant, who had threatened to hurt him. April Prather testified that Appellant told her he
wanted Davis dead. Ms. Prather also testified that she had made the 9-1-1 call, and that Appellant
had been running around saying he had shot Davis. She also testified that Davis was lying near the
back of Appellant's truck. Todd Cook testified that he heard Appellant say he did not shoot Davis. 
Kelly Clark, Davis's girlfriend, testified that Appellant had come into Davis's house and demanded
money. The two men had argued and then gone outside. Within a minute, she heard the gunshot. 
She testified that, after the shooting, Appellant said he had shot Davis, but that it was an accident. 

 Kam Emig testified that he had known Appellant and Davis for years. He admitted that, prior
to agreeing to testify in this case, he had obtained testimonial immunity from the State regarding his
use of drugs and his dealing drugs with Appellant. Emig testified that twice in the months before
the shooting, Appellant had said he was going to kill Davis. Emig also testified that he was in the
yard when he heard the gunshot. He ran around Appellant's truck where he met Appellant who said,
"I shot Brad, I shot Brad." 

 Troy Savage had worked that Saturday for M & L Utilities, a company that does underground
telephone line construction. He had just returned to the M & L truck yard in Emory across the street
from Davis's house, and was sitting in his company truck waiting for another M & L employee, Raul
Sanchez, to come across the yard. He saw Appellant and Davis standing next to the truck. Next, he
saw the man who was identified as Appellant turn toward the truck and then turn back toward the
other man. Savage then heard a pistol shot. He testified that the man identified by his shirt as being
Davis was not in the doorway of Appellant's truck. Savage also testified that Sanchez did not come
across the truck yard to his truck until a minute or two after the shooting.

 Mike Davis, the victim's father, testified that his son borrowed a .44 magnum pistol from him
because he was scared Appellant was going to kill him. Davis's father also testified that when his
son was in the hospital, totally paralyzed and unable to move any part of his body except his eyes,
they developed a system of communication by which his son blinked his eyes in response to "yes"
and "no" questions. When he asked Davis if Appellant had shot him, Davis responded with one
blink for "yes."

 Police and law enforcement technicians testified about police procedure in evaluating the
crime scene and testing the pistol with which Davis was shot. They also testified about medical and
autopsy issues. 

 Appellant testified that he had passed by Davis's house and, noticing Davis was home, came
back to the house to talk with Davis about some money Davis owed him. He parked his truck and
went up to the house. Davis met him at the door, and let him in. Soon after Appellant had entered
the house, Davis became so agitated that Appellant decided to leave. The two men went outside and
walked over to Appellant's truck. Appellant testified that, while they were standing in the doorway
of his truck, Davis shoved him into the door, reached into Appellant's truck, and grabbed the gun. 
The gun fired, hitting Davis in the face. Appellant denied shooting Davis, and denied telling anyone
he had shot Davis. He also testified he did not sell drugs to Kam Emig, but rather, that he bought
drugs from Kam Emig.

 The jury found Appellant guilty of murder, and sentenced him to imprisonment for twenty-three years in prison, with no fine. This appeal followed.


Legal Sufficiency

 In his first issue, Appellant contends that the evidence is legally insufficient to support his
conviction for murder. 

Standard of Review

 In reviewing a legal sufficiency question, we must view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000). The trier of fact, here the jury, is the exclusive judge of the credibility of witnesses and of
the weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App.
1994); Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). The jury is entitled to draw
reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex.
App.-Corpus Christi 1988, pet. ref'd). Likewise, reconciliation of conflicts in the evidence is within
the exclusive province of the jury. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 
Although an appellate court's analysis considers all the evidence presented at trial, it may not "re-weigh the evidence and substitute [the appellate court's] judgment for that of the jury." King, 29
S.W.3d at 562. Legal sufficiency of the evidence is measured by the elements of the offense as
defined by the hypothetically correct jury charge, which accurately sets out the law, is authorized by
the indictment, and does not unnecessarily increase the State's burden. Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997); see also Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App.
2001).

Analysis

 Appellant was indicted for the murder of Jeremy Brad Davis, pursuant to Section 19.02(b)(1)
and (2) of the Texas Penal Code, which defines the offense of murder as either intentionally or
knowingly causing the death of an individual, or intending to cause serious bodily injury and
committing an act clearly dangerous to human life that causes the death of an individual. See Tex.
Pen. Code Ann. § 19.02(b)(1), (2) (Vernon 2003). 

 The evidence shows that Appellant and Davis had once been friends, but they had become
estranged. Their relationship had become so antagonistic that Davis had spoken to the police and
to his friends of his fear that Appellant would attack him. His fear was so strong that he borrowed
guns to protect himself from Appellant. Witnesses testified that Appellant made statements to them
threatening Davis. On September 30, 2000, Appellant stopped by Davis's house to collect money
he said Davis owed him. Davis came to the door carrying a pistol for his protection. The two men
argued, then agreed to go outside to continue their discussion. The two men went to Appellant's
truck out of the sight of other people. Shortly thereafter, others at Davis's house heard a gunshot and
ran outside, meeting Appellant who, several witnesses testified, admitted he had shot Davis. Davis's
father testified that his son had indicated through signals that Appellant had shot him. This is
evidence upon which the jury could have based its decision that Appellant shot Davis and caused
his death.

 Reviewing the evidence in the light most favorable to the jury's verdict, we hold that a
rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. 
Therefore, the evidence is legally sufficient to support Appellant's conviction. Appellant's first issue
is overruled.



Factual Sufficiency

 In his second issue, Appellant contends that the evidence is factually insufficient to support
his conviction for murder. 

Standard of Review

 When reviewing the factual sufficiency of the evidence, we review all of the evidence, but
not in the light most favorable to the prosecution. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). We set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). In conducting our analysis, our duty is to examine the trier of fact's weighing of the evidence. 
Scott v. State, 934 S.W.2d 396, 398 (Tex. App.-Dallas 1996, no pet.). We consider all the evidence
in the record related to an appellant's sufficiency challenge, comparing the weight of the evidence
that tends to prove guilt with the evidence that tends to disprove it. See Fuentes v. State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999); Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997). Because we consider all the evidence in conducting a factual sufficiency review, we
necessarily consider any reasonable alternative hypothesis raised by the evidence. Richardson v.
State, 973 S.W.2d 384, 387 (Tex. App.-Dallas 1998, no pet.). However, the mere existence of a
reasonable hypothesis does not render the evidence factually insufficient. Id.

 Because the jury is the sole judge of the facts, we must give deference to jury findings. Cain,
958 S.W.2d at 407. However, absolute deference is not the standard. Johnson v. State, 23 S.W.3d
1, 8 (Tex. Crim. App. 2000). The degree of deference we give to jury findings must be proportionate
with the facts which we can accurately glean from the trial record. Id. Our factual sufficiency
analysis can consider only those few matters bearing on credibility that can be fully determined from
the cold appellate record. Id. Unless the appellate record before us reveals that a different result is
appropriate, we must defer to the jury's determination concerning what weight to give contradictory
testimonial evidence. Id. This is because resolution often turns on an evaluation of credibility and
demeanor, and the jury, in attendance when the testimony was delivered, is in a better position to
make that evaluation of the witnesses' testimony. Id. We then accord this evidence appropriate
consideration in the context of our overall analysis. Id. at 8-9. A factual sufficiency review
encompasses the formulations used in both civil and criminal cases. Id. at 11. This means that the
evidence can be factually insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust
or (2) the adverse finding is against the great weight and preponderance of the available evidence. 
Id. In Johnson, the court of criminal appeals wrote that


 the complete and correct standard a reviewing court must follow to conduct a Clewis factual
sufficiency review of the elements of a criminal offense asks whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the jury's determination, or the proof of guilt, although adequate when
taken alone, is greatly outweighed by contrary proof.



Id. Applying these guidelines, we now address the factual sufficiency of the evidence.

Analysis

 In addition to the testimony supporting the verdict, including Appellant's admission that he
shot Davis, Davis's indication to his father that Appellant shot him, and Davis's fear of Appellant
as a result of Appellant's threats against his life, we also consider the evidence that tends to disprove
Appellant's guilt. Thus, we also consider Appellant's testimony that Davis shoved him, grabbed the
pistol, and accidentally shot himself, as well as testimony that Appellant denied shooting Davis, and
that Appellant said he did not mean to shoot Davis.

 The jury heard both the State's evidence and witnesses, and Appellant's testimony and his
witnesses. The jury saw the demeanor of the witnesses and evaluated the credibility of each witness. 
The jury chose to believe the State's evidence. After considering all of the evidence, both for and
against the verdict, we cannot say that the proof of guilt is so obviously weak as to undermine
confidence in the jury's determination, or that the proof of guilt, although adequate when taken
alone, is greatly outweighed by contrary proof. Therefore, we hold that the evidence is factually
sufficient to support Appellant's conviction. Appellant's second issue is overruled.


Exclusion of Evidence

 In his third issue, Appellant contends the trial court abused its discretion in excluding
evidence of certain items found in Davis's house, including guns, partially-burned marijuana
cigarettes, and drug paraphernalia. Specifically, Appellant argues that the trial court erred in
determining the evidence of the drugs and drug paraphernalia was not relevant. (3)

Standard of Review

 The court of criminal appeals has held that "[q]uestions of relevance should be left largely
to the trial court, relying on its own observations and experience, and will not be reversed absent an
abuse of discretion." Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993) (citing
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)(op. on reh'g)). The
Montgomery court noted that, "[i]n deciding whether a particular piece of evidence is relevant, a trial
court judge should ask 'would a reasonable person, with some experience in the real world, believe
that the particular piece of evidence is helpful in determining the truth or falsity of any fact that is
of consequence to the lawsuit.'" Id. at 376 (citations omitted). It is incumbent on the proponent of
the evidence to satisfy the trial court of the relevance of the proffered evidence. Id. at 387 (op. on
reh'g).

Analysis

 Texas Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to
make the existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence." Tex. R. Evid. 401. The trial court,
in ruling the drugs the police found in Davis's house were not relevant to the issues at trial, noted
that the drugs and drug paraphernalia were found inside the house, but the shooting occurred outside. 
The court also noted that, in order to be relevant and therefore admissible, testimony about the drugs
must be in the context of an issue the jury will consider. 

 Appellant argues that the marijuana and drug paraphernalia were relevant to the issues at
trial because Davis had marijuana in his system when he was shot. Therefore, Appellant contends,
the presence of the drugs supports the proposition that the witnesses "had all potentially been
smoking marijuana." Appellant attempts to bolster his contention by pointing out discrepancies in
the testimony of the witnesses. He then argues that, due to the various conflicts in the testimony
of the witnesses, evidence of the availability of narcotics in the house could explain what he
suggests was the witnesses' lack of clarity and consistency in their perception of events. In short,
Appellant concludes that smoking marijuana "could have affected these witnesses' ability to give
a reasonable rendition of what happened." 

 Although items of illicit drugs and drug paraphernalia were found in Davis's house, there
was no evidence that anyone other than Davis had used the drugs or was under the influence.
Indeed, several of the witnesses, when asked directly about using drugs on the day of the murder,
denied using drugs. 

 The accuracy of the testimony of the witnesses is important. However, Appellant failed to
meet his burden to demonstrate a connection between the drugs and drug paraphernalia found in
the house, and the "fact that is of consequence," to-wit: whether Appellant shot Davis. Although
drugs were found in Davis's blood, there is no evidence to connect any of the witnesses to the drugs
found in the house. Because Appellant was unable to connect the drugs in the house with the
shooting, we cannot say the trial court abused its discretion in determining the drugs and drug
paraphernalia were not relevant to a fact of consequence in Appellant's trial. Appellant's third issue
is overruled.

 

Ineffective Assistance of Counsel

 Appellant contends in his fourth issue that he was denied effective assistance of counsel. 

Standard for Effective Assistance of Counsel

 The proper standard by which to gauge the adequacy of representation by counsel is
articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). See
also McFarland v. State, 928 S.W.2d 482, 499-500 (Tex. Crim. App. 1996). To determine whether
counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to
counsel, an appellant must first show that counsel's performance was deficient, i.e., that his
assistance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 694, 104 S.
Ct. at 2068; McFarland, 928 S.W.2d at 500. Second, assuming an appellant has demonstrated
deficient assistance, he must also affirmatively prove prejudice. See Strickland, 466 U.S. at 694,
104 S. Ct. at 2068; McFarland, 928 S.W.2d at 500. In other words, an appellant must show a
reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; McFarland, 928
S.W.2d at 500. A "professionally unreasonable" error by trial counsel does not require a reversal
if the error had no effect on the judgment. Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. A
reasonable probability is a probability sufficient to undermine confidence in the outcome. 
McFarland v. State, 845 S.W.2d 824, 842-43 (Tex. Crim. App. 1992).

 When determining the validity of a defendant's claim of ineffective assistance of counsel,
any judicial review must be highly deferential to the trial counsel and avoid the deleterious effects
of hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). Therefore, in any
case considering the issue of ineffective assistance of counsel, we begin with the strong
presumption that counsel was effective. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065;
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The appellant has the burden of
rebutting this presumption. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); Kemp
v. State, 892 S.W.2d 112, 115 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). To do so, the
appellant must (1) identify the acts or omissions that are alleged to constitute ineffective assistance,
and (2) affirmatively prove they fall below the professional norm for reasonableness. McFarland,
928 S.W.2d at 500. Any allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness. Id. In the absence of a proper
evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult on
direct appeal to show that trial counsel's performance was deficient. Gibbs v. State, 7 S.W.3d 175,
179 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd). An appellant must prove ineffective
assistance by a preponderance of the evidence. McFarland, 845 S.W.2d at 843. 

Alleged Ineffective Assistance

 Appellant's complaint of ineffective assistance relates to his trial counsel's failure to file
a "sworn" motion for continuance and his trial counsel's failure to locate Raul Sanchez for trial.

 On January 18, 2002, Appellant's trial counsel filed a motion for continuance. The motion
noted the case was set for trial on January 28, 2002. The motion stated that a "probable" witness,
Raul Sanchez, had been revealed in the course of discovery, but Sanchez's address and his location
were unknown. The motion also stated that, on January 15, 2002, the State had provided defense
counsel with Sanchez's date of birth and social security number. Appellant's trial counsel also
noted that a possible lead to Sanchez's location could be obtained through M & L Utilities, but that
M & L was requiring Appellant's counsel to subpoena that information. The motion was not sworn
to by a person having personal knowledge of the facts relied on in the motion as required by article
29.08 of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 29.08
(Vernon 1989) (motion for continuance must be sworn to by person having personal knowledge of
facts relied on for continuance).

 The trial court conducted a hearing on Appellant's motion. In response to Appellant's
subpoena, a representative from M & L Utilities brought his company's records regarding Raul
Sanchez. The company records contained Sanchez's social security number, a "Resident Alien"
card, and two addresses for Sanchez. 

 Phillip Killgore, the investigator for the Rains County Attorney's office, testified concerning
his efforts, as well as the efforts of the Immigration and Naturalization Service ("INS") and an
officer in the Garland office of the Department of Public Safety, to locate Sanchez. Killgore
testified that investigators had gone by the two Plano addresses Sanchez had given as his permanent
addresses, and had talked to Able Bautista, one of Sanchez's former co-workers at M & L, who still
resided at one of the addresses. Bautista did not know Sanchez's location. According to Killgore,
the INS had endeavored to track Sanchez down, but was unable to do so. The INS had determined
Sanchez last reported income in August 2001.

 Killgore also testified that he had interviewed Troy Savage, who witnessed the shooting.
Savage told him he had dropped Sanchez off at the front of the M & L building, and had driven
around behind the building to park the truck when he witnessed the shooting. Killgore testified that
Savage told him Sanchez came up after the shooting, and that Sanchez had asked Savage what had
happened. Thus, Savage confirmed that Sanchez had not seen anything and was not a witness to
the shooting. Mention was made of a third man who had been in the truck, but further investigation
revealed that he had been dropped off earlier at his home before Savage and Sanchez had proceeded
to the M & L site. Therefore, he was not at the M & L site on the evening of the shooting.

 After a break in the testimony, Killgore testified that in the interim since the earlier hearing,
he had spoken with the INS, and had determined that the resident alien number Sanchez had been
using actually belonged to someone else. Therefore, Sanchez was using a fraudulent number. 

 The trial court, in reviewing the testimony, found that the parties and the investigators had 
exercised "a lot of diligence in trying to find" Sanchez. The court commented that Sanchez might
not be found despite any grant of additional time. The court denied the motion for continuance. On
January 29, 2002, Appellant again urged his motion for continuance due to his continued inability
to locate Sanchez. The court again denied the motion. 

 The disposition of a motion for continuance is committed to the "sound discretion of the
trial court." Tex. Code Crim. Proc. Ann. art. 29.05(6) (Vernon 1989). Appellant contends that
the trial court abused its discretion in denying the motion for continuance. However, because the
motion was unsworn, Appellant is unable to present this issue for our review. See Dewberry v.
State, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999) (unsworn motion for continuance preserves
nothing for review on appeal). 

 Appellant recognizes that an isolated mistake, such as filing an unsworn motion for
continuance, does not generally constitute ineffective assistance of counsel. See McFarland, 928
S.W.2d at 500 (counsel's errors must be judged by totality of representation and not by isolated
instances of error). However, Appellant contends that this error by trial counsel, 


 along with his last minute trial preparation, was clearly harmful to appellant in that an independent
witness, who might have made a difference in this trial, and whom a prompt and thorough
investigation would have discovered and located before August, 2001, when he left town, was never
contacted or interviewed. No attorney providing effective assistance of counsel waits until a month
before the beginning of trial--especially a Murder trial--when the case has been pending over a
year, to request discovery of witnesses and potentially exculpatory evidence (emphasis in original).



Application of the Strickland Standard

 As previously noted, to meet the Strickland standard for ineffective assistance of counsel,
Appellant must first show that his counsel's performance was deficient. See Strickland, 466 U.S.
at 694, 104 S. Ct. at 2068. When the record is silent, an appellate court may not speculate about the
reasons for counsel's actions. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Furthermore, without testimony from trial counsel, we must presume counsel had a plausible reason
for his conduct. Gibbs v. State, 7 S.W.3d 175, 179 (Tex. App.-Houston [1st Dist.] 1999, pet.
ref'd). 

 On March 1, 2002, Appellant filed a motion for new trial. However, he did not raise
ineffective assistance of counsel in his motion. Consequently, there is no evidence in the record
explaining why trial counsel conducted the investigation as he did. Therefore, Appellant has not
overcome the strong presumption that his trial counsel acted within the range of reasonable
professional assistance. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. However, we will
assume arguendo that counsel's performance was deficient. 

 Once an appellant has established that his counsel's performance was deficient, he must then 
prove the existence of a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068;
McFarland, 928 S.W.2d at 500. The motion for continuance filed by trial counsel contained the
name of a "probable witness," Raul Sanchez. It outlined trial counsel's efforts to determine the
location of the witness, including subpoenaing the witness's employer, M & L Utilities, to
determine more information. The motion alleged the witness "is believed to be vital to the defense
and without the presence of this witness the defendant will not be afforded a fair and effective trial.
. . ." However, the motion includes no recitation of the facts that were expected to be proved by the
witness. Tex. Code Crim. Proc. Ann. art. 29.06(3) (Vernon Supp. 2004). (4) 

 During the pre-trial hearing on the motion for continuance, Killgore testified that both
Savage and the police chief had verified that Sanchez had not seen the shooting. Savage told
Killgore that, after the shooting, Sanchez came around the building from where Savage had dropped
him off to where Savage's truck was parked across from Davis's house. Sanchez then asked
Killgore what had happened, indicating that Sanchez had not seen the shooting. Further, Killgore
testified the police chief confirmed with Sanchez that he, Sanchez, had not seen the shooting and
was not a witness. In short, having not seen the offense, Sanchez was not a witness. Because
Sanchez would have been unable to provide testimony on a material fact in the case, his attendance
and testimony at trial would not have had any conceivable effect on the outcome of the trial. 
Therefore, assuming trial counsel's conduct was deficient, it cannot be said that, but for such
conduct, the jury would have heard evidence that would have established a reasonable doubt
respecting Appellant's guilt. 

 Appellant has failed to establish ineffective assistance of counsel under the Strickland
standard. Accordingly, Appellant's fourth issue is overruled.


Motion for Mistrial

 In his fifth issue, Appellant contends the trial court erred in denying Appellant's motion for
mistrial in response to the prosecutor's closing argument during the punishment phase of the trial. 
During his argument, the district attorney, speaking about the jury charge on probation, said, "Is that
[probation] punishment? As far as I'm concerned, you can take that probation thing and just tear
it off." Appellant contends this statement both injected the district attorney's personal opinion into
a statement before the jury and asks the jurors to ignore their oath. See Tex. Code Crim. Proc.
Ann. art. 35.22 (Vernon 1989) (jurors take an oath to render a true verdict "according to the law
and the evidence. . . .")

Standard of Review

 The four general areas for proper jury argument are (1) summation of the evidence, (2)
reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea
for law enforcement. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Argument
beyond the bounds of these four areas will not constitute reversible error unless, in light of the
record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute,
or injects new facts harmful to the accused into the trial proceeding. Id. The remarks must have
been a willful and calculated effort by the State to deprive an appellant of a fair and impartial trial.
Id. In most instances, an instruction to disregard the remarks will cure the error. Id. 

Applicable Law and Analysis

 In Quinton v. State, 56 S.W.3d 633, 640 (Tex. App.-Waco 2001, pet. ref'd), the prosecutor
argued that the jury should not place the defendant on probation because there was nothing the
probation department could do to help the defendant. Id. The defendant objected, the objection
was sustained, and the court instructed the jury to disregard the remark. The defendant's motion
for mistrial was denied. The Waco court held that the instruction to disregard was sufficient to cure
the prejudicial effect of the argument. Id. at 641.

 Similarly, in Huseman v. State, 96 S.W.3d 368, 376 (Tex. App.-Amarillo 2002, pet. ref'd),
the prosecutor told the jury that if the crimes committed by the accused were worthy of probation,
the accused "could ride the elevator down with you. . . ." Id. Appellant did not object to the
prosecutor's statement. The Amarillo court held that the issue had been waived on appeal because
an instruction to disregard would have been sufficient to remove the harm. Id. Moreover, the court
stated in dicta that even if the issue had not been waived, the prosecutor's comment was similar to
other comments held to be a proper plea for law enforcement. Id.

 In Johnson v. State, 698 S.W.2d 154, 167 (Tex. Crim. App. 1985), the prosecutor, in
discussing the three issues on a capital murder punishment charge, said that "the question asks you
to determine, is there any provocation by the deceased. Now, if, I personally don't think there is-."
Id. The defense immediately objected, due to the injection of the prosecutor's opinion into the
argument. The court sustained the objection. The Johnson court noted that "[i]t is improper for
a prosecutor to inject personal opinion in statements to the jury." Johnson, 698 S.W.2d at 167. 
However, the court held that the trial court's prompt instructions to disregard were sufficient to cure
any harm inuring to the appellant. Id. Furthermore, the court observed that generally any harm
from an improper statement in a jury argument is remedied when the court instructs the jury to
disregard unless the remark is so inflammatory that the prejudicial effect cannot be removed by an
admonishment. Id.

 In the present case, the district attorney said, "Is that [probation] punishment? As far as I'm
concerned, you can take that probation thing and just tear it off." Appellant objected, and his
objection was sustained. The court instructed the jury to disregard. The district attorney concurred,
saying, "[i]gnore that for my part." Appellant then asked for a mistrial, which was denied.

 The district attorney's statement here is far less egregious than the prosecutor's comment
in Johnson that he "personally [didn't] think there" was evidence of provocation in a capital murder
case. Additionally, the trial court promptly responded to Appellant's objection, and the district
attorney also asked the jury to ignore his statement. We hold that the comment was not so
inflammatory that its prejudicial effect could not have been overcome by the court's prompt
admonishment.

 Assuming arguendo that the trial court erred in denying the motion for mistrial, the result
does not change. Improper jury argument is non-constitutional error, which we must disregard
unless it affected Appellant's substantial rights. See Tex. R. App. P. 44.2(b); Mosley v. State, 983
S.W.2d 249, 259 (Tex. Crim. App. 1998). A substantial right is affected when the error has a
"substantial and injurious effect or influence in determining the jury's verdict." King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (quoting Kotteakos v. United States, 328 U.S. 750, 776,
66 S. Ct.1239, 1253, 90 L. Ed. 1557 (1946)). The Mosley court recognized that there are three
factors to consider in evaluating improper arguments: (1) severity of the misconduct (the magnitude
of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct
(the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent
the misconduct (the strength of the evidence supporting the conviction). Mosley, 983 S.W.2d at
259.

 Applying the factors recognized in Mosley, we conclude that the misconduct and prejudicial
impact of the district attorney's statement were not so severe that the immediate instruction from
the judge could not cure any prejudicial impact. Furthermore, the jury was presented with strong
evidence supporting Appellant's conviction, even absent the district attorney's statement. Finally,
it is especially significant that probation was not available to Appellant because he was sentenced
to more than ten years in prison. Tex. Code Crim. Proc. Ann. art. 42.12 § 3(e)(1)(Vernon Supp.
2004). In light of the testimony of the entire trial, the range of punishment available to the jury
(probation, or a range of imprisonment from five to ninety-nine years, or life), and the sentence of
imprisonment for twenty-three years, which is at the lower end of the range, we conclude that the
district attorney's statement did not affect a substantial right, and did not have a "substantial and
injurious effect or influence in determining the jury's verdict." King, 953 S.W.2d at 271. 

 The trial court did not commit reversible error in denying Appellant's mistrial in response
to the district attorney's closing argument. Appellant's fifth issue is overruled.


Extraneous Offense

 In his sixth issue, Appellant contends the trial court abused its discretion in permitting
testimony concerning extraneous offenses allegedly committed by Appellant. Specifically,
Appellant points out that Emig was permitted to testify, over objection of Appellant, that he and
Davis owed Appellant money for drugs they had purchased from Appellant.

Standard of Review

 We review the trial court's ruling on whether to exclude evidence of "other crimes, wrongs,
or acts" under Rule 403 by an abuse of discretion standard. Montgomery, 810 S.W.2d at 391. An
appellate court should not conduct a de novo review of the record with a view to making a wholly
independent judgment whether the probative value of evidence of 'other crimes, wrongs, or acts'
is substantially outweighed by the danger of unfair prejudice. Id. Further, after conducting its
review, an appellate court should reverse the judgment of the trial court rarely and only after a clear
abuse of discretion. Id.; see also Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). 
Trial courts are in the best position to decide these admissibility questions. Robbins v. State, 88
S.W.3d 256, 260 (Tex. Crim. App. 2002). Therefore, an appellate court should uphold a trial
court's admissibility decision when that decision is within the zone of reasonable disagreement. 
Id. Whether extraneous offense evidence has relevance apart from character conformity, as
required by Rule 404(b), is a question for the trial court. Moses, 105 S.W.3d at 627. An appellate
court owes no less deference to the trial judge in making this decision than it affords him in making
any other relevancy determination. Id. 

Applicable Law

 The Texas Rules of Evidence determine the admissibility of extraneous offense evidence. 
 Rule 402 states that "[a]ll relevant evidence is admissible, except as otherwise provided by
Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. 
Evidence which is not relevant is inadmissible." Tex. R. Evid. 402. Rule 401 states that
"'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that
is of consequence to the determination of the action more probable or less probable than it would
be without the evidence." Tex. R. Evid. 401. Rule 403 is couched in exclusionary terms, (5) but
"favors the admission of relevant evidence and carries a presumption that relevant evidence will
be more probative than prejudicial." Williams v. State, 958 S.W.2d 186, 196 (Tex. Crim. App.
1997). "[I]t has long been the rule in this State that the jury is entitled to know all relevant
surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." 
Wyatt v. State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (quoting Moreno v. State, 721 S.W.2d 
295, 301 (Tex. Crim. App. 1986)). 

 Rule 404(b) states, in part, that "[e]vidence of other crimes, wrongs or acts is not admissible
to prove the character of a person in order to show action in conformity therewith. It may, however,
be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident. . . ." Tex. R. Evid. 404(b). Reading Rule
404(b) in light of Rule 401 and Rule 402, if evidence 1) is introduced for a purpose other than
character conformity, 2) is relevant to a "fact of consequence" in the case, and 3) remains free of
any other constitutional or statutory prohibitions, it is admissible. Rankin v. State, 974 S.W.2d
707, 709 (Tex. Crim. App. 1996). 

 In Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001), the court of criminal
appeals held that the trial court properly admitted evidence of other instances of sexual contact in
a trial for aggravated sexual assault. Id. The court held that the trial court could have reasonably
decided that the extraneous offense evidence at issue had noncharacter conformity relevance where
it rebutted the appellant's defensive theory. Thus, the court concluded that it was at least subject
to reasonable disagreement whether the extraneous offense evidence made the defensive theory
more or less probable. Id.

 In the present case, the State wanted Emig to testify that the disagreement between Davis
and Appellant occurred because Davis had bought drugs from Appellant and owed him money. The
State also wanted to explain to the jury why Emig had received immunity from the State. Finally,
the State wanted to rebut Appellant's defensive theory that Davis was accidentally shot, either by
himself or by Appellant. 

 Based upon our review of the record, we hold that the trial court's decision to permit
the State to develop testimony of Appellant's drug involvement was not error in that it rebutted a
defensive theory of accident and provided evidence of motive. Thus, the testimony served to make
more probable an elemental fact of this case, the motive, and make less probable a defensive theory. 
Appellant's sixth issue is overruled.

Conclusion

 Having overruled Appellant's issues one, two, three, four, five, and six, the judgment of the
trial court is affirmed.




 SAM GRIFFITH 

 Justice



Opinion delivered February 27, 2004.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.























 




(DO NOT PUBLISH)
1. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
2. Tex. Pen. Code Ann. § 19.02(b)(1), (2) (Vernon 2003).
3. In his brief, Appellant makes no argument pertaining to the guns.
4. In fairness to Appellant's trial counsel, however, he stated as much as he could honestly say. As he had
been unable to speak with Sanchez, trial counsel was limited in what he could legitimately suggest would be
Sanchez's testimony.
5. Texas Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or
by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.